## Ed & Jim Fleitz, Inc., et al.,[1] Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 3564-66—3567-66, 5101-67, 5102-67.   Filed May 27, 1968.

*Paul A. Tscholl*, for the petitioners.
*Gary F. Walker*, for the respondent.

Mulroney, *Judge:* Respondent determined deficiencies in income tax as follows:

| Docket No. | Petitioner(s) | FYE Nov. 30— | Income tax deficiency |
|---|---|---|---|
| 3564-66 | Ed & Jim Fleitz, Inc. | 1962 | $1,349.51 |
|  |  | 1963 | 339.75 |
|  |  | 1964 | None |
| 3565-66 | Edward B. Fleitz and Thelma Fleitz | 1962 | 945.13 |
|  |  | 1963 | 657.33 |
| 5101-67 | Edward B. Fleitz and Thelma Fleitz | 1964 | 1,050.31 |
| 3566-66 | James J. Fleitz and Evelyn M. Fleitz | 1963 | 557.58 |
| 5102-67 | James J. Fleitz and Evelyn M. Fleitz | 1964 | 739.58 |
| 3567-66 | Robert J. Fleitz and Joan B. Fleitz | 1962 | 774.12 |
|  |  | 1963 | 571.28 |
|  |  | 1964 | 708.08 |

Respondent's adjustments to the taxable income of Ed & Jim Fleitz, Inc. (sometimes referred to herein as petitioner), for its fiscal year

---

[1] The following proceedings are consolidated herewith: Edward B. Fleitz and Thelma Fleitz, docket Nos. 3565-66 and 5101-67; James J. Fleitz and Evelyn M. Fleitz, docket Nos. 3566-66 and 5102-67; and Robert J. Fleitz and Joan B. Fleitz, docket No. 3567-66. Thelma Fleitz, Evelyn M. Fleitz, and Joan B. Fleitz are parties herein only because they filed joint returns with their husbands.

ended November 30, 1964, did not result in a deficiency for the reason that the increase in petitioner's tax before credits from $761.66 to $810.98 was offset by a like increase in the investment credit to $810.98. However, the issue relating to petitioner's fiscal year ended November 30, 1964, is to be considered.

Correlative adjustments in docket Nos. 3565–66, 5101–67, 3566–66, 5102–67, and 3567–66 depend on a resolution of the issue in docket No. 3564–66 as it relates to all three of petitioner-corporation's fiscal years ended November 30, 1962, 1963, and 1964.

The principal issue is whether petitioner, Ed & Jim Fleitz, Inc., is entitled to deduct its contributions to a profit-sharing trust created for the benefit of its salaried employees. A related issue in docket Nos. 3565–66, 5101–67, 3566–66, 5102–67, and 3567–66, concerns the inclusion in the individual petitioners' taxable income of prorata shares of the contributions paid by Ed & Jim Fleitz, Inc., into the trust. The parties have agreed that this issue with respect to the individual petitioners will be resolved by our decision on the principal issue stated above.

### FINDINGS OF FACT

Some of the facts were stipulated and they are so found.

Ed & Jim Fleitz, Inc., an Ohio corporation, formed on January 3, 1961, had its principal office in Oregon, Ohio, at the time its petition was filed. The legal residences of the individual petitioners at the time their petitions were filed were Oregon, Ohio, for Edward B. and Thelma Fleitz, and Toledo, Ohio, for James J. and Evelyn M. Fleitz and Robert J. and Joan B. Fleitz. All income tax returns for the years covered by these consolidated proceedings were filed with the district director of internal revenue, Cleveland, Ohio. The corporation filed its income tax returns on an accrual basis of accounting for the fiscal years ending November 30, 1962, November 30, 1963, and November 30, 1964.

Petitioner is engaged in the mason contracting business. Prior to its incorporation on January 3, 1961, the business had been conducted as a partnership by petitioners, Edward Fleitz and James Fleitz. Edward and James each own 25 shares of no-par stock of the corporation. The corporation has no other issued or outstanding stock. It has declared a $1 dividend on each share of stock in each of the fiscal years involved herein.

On August 22, 1961, petitioner executed a trust agreement entitled "Ed & Jim Fleitz, Inc. Employees Profit Sharing Trust." The pertinent provisions of the trust are as follows:

## Article I

### Terms and Definitions

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

3. The word "Employee" shall mean any salaried individual employed by the Company, and whose right to be employed is in fact controlled exclusively by the Company.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

6. The first year for which the trust shall be effective shall be the fiscal year ending November 30, 1961.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

8. The term "fiscal year" shall refer to the period of time ending November 30 of each year.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## Article II

### Eligibility

Every employee of the Company including officers, but not including a director unless such director is also an officer or other salaried employee, shall be eligible for membership in the Plan, who, on the first day of December in any year hereafter, beginning with January 3, 1961 as if it were December 1, 1960, shall have been a full-time employee (as defined in Article I, 3) continuously for one year on or before that date. A person shall not be considered as continuing as an employee where he has been temporarily laid off, with or without pay, unless he has been granted a leave of absence. A full-time employee is one who has worked a minimum of twenty (20) hours per week for a period of five (5) months or more in any given fiscal year.

## Article III

### Company Contributions

A) for the year ending November 30, 1961, and for each fiscal year thereafter the Company may make contributions from its profits to the Trust Fund in amounts of 100% of net profit before contribution—not to exceed 15% of the covered payroll.

Other paragraphs of the agreement made provision for participation of each eligible employee, the determination of the interest of each beneficiary in the trust fund, the administration of the fund, and the time of vesting and its distribution to the employee or his beneficiary.

On November 22, 1961, petitioner requested that the district director of internal revenue at Cleveland, Ohio, issue a determination letter as to whether the plan was qualified under section 401(a), I.R.C. 1954,[2] and whether the trust created with the plan was exempt under section 501(a). The district director sent petitioner a letter dated May 11, 1962, which stated in material part as follows:

Attention is invited to section 1.401-1(b)(3) of the Regulations under the Internal Revenue Code of 1954 which states in part: "The law is concerned not

---

[2] All Code references herein are to the Internal Revenue Code of 1954.

only with the form of a plan but also with its effects in operation." Section 401(a)(5) of the Internal Revenue Code specifies certain provisions which of themselves are not discriminatory; however, this does not mean that a plan containing these provisions may not be discriminatory in actual operation.

After careful consideration of all the relevant information submitted, it is deemed impossible at this time to ascertain whether or not your plan in actual operation will discriminate in favor of employees specified in section 401(a)(4) of the Internal Revenue Code. Under such circumstances an advance determination letter may not be issued.

Subject to the conditions and limitations of section 404 of the Internal Revenue Code, the determination as to the allowability of deductions claimed on your return for contributions made under your plan will be made at the time of examination of such return.

During the fiscal years ending November 30, 1962, 1963, and 1964, there were only three employees who were salaried, and, therefore, covered by the plan. They were Edward, Robert, and James Fleitz.

Petitioners Edward and James Fleitz are brothers and Robert Fleitz is the son of James. Edward is president of the corporation, James is assistant treasurer, and Robert is vice president. Edward and Robert devote all of their time to the corporation's business while James devotes 80 percent of his time to the business.

The compensation paid to petitioner's three salaried employees, petitioner's contributions to the profit-sharing plan, and the prorata share of the petitioner's contributions allocated to each salaried employee during the years in issue, showing dates of accrual and dates of payment, were as follows:

| Ed & Jim Fleitz, Inc., FYE | Nov. 30, 1962 | Nov. 30, 1963 | Nov. 30, 1964 |
| --- | --- | --- | --- |
| Compensation received by: | | | |
| Edward B. Fleitz | $14,500.00 | $17,600.00 | $17,850.00 |
| James J. Fleitz | 11,350.00 | 12,700.00 | 13,650.00 |
| Robert J. Fleitz | 14,500.00 | 17,600.00 | 17,850.00 |
| Total | 40,350.00 | 47,900.00 | 49,350.00 |
| Contributions accrued by Ed & Jim Fleitz, Inc. (15% of compensation) | 6,052.50 | 7,185.00 | 7,402.50 |
| Date contributions paid: | 2/9/63 | 2/12/64 | |
| Tax year | 1963 | 1964 | |
| Prorata share of contributions paid: | | | |
| Edward B. Fleitz | 2,178.90 | 2,622.52 | |
| James J. Fleitz | 1,694.70 | 1,939.95 | |
| Robert J. Fleitz | 2,178.90 | 2,622.53 | |
| Total | 6,052.50 | 7,185.00 | |

It is stipulated that during the fiscal year 1962 the petitioner paid wages to 12 hourly-paid permanent employees. During the fiscal year 1963 the petitioner paid wages to 10 hourly-paid permanent employees.

During the fiscal year 1964 the petitioner paid wages to 11 hourly paid permanent employees. The highest wage paid to an hourly paid permanent employee in 1962, 1963, and 1964, was $6,352.29, $6,753.18, and $8,066.20, respectively.

In addition, petitioner had seasonal temporary hourly paid employees as follows: 7 in 1962, 21 in 1963, and 32 in 1964. These employees only worked a few days, weeks, or months in the fiscal years involved.

All of the hourly paid employees were members of a union and they were paid an hourly rate established by the union. There was no pension plan in effect for the hourly paid employees employed by the petitioner during the fiscal years 1962, 1963, and 1964.

Petitioner claimed deductions on its income tax returns for the fiscal years 1962, 1963, and 1964 for accrued contributions to the trust in the amounts of $6,052.50, $7,185, and $7,402.50, respectively. The net effect of respondent's determinations and adjustments as to petitioner's income tax for the years in question is to hold that the Ed & Jim Fleitz, Inc. Employees Profit Sharing Trust is a nonqualified trust.

Paragraph 5 of the stipulation provides as follows:

Paragraph 4 of each petition filed for Edward B. and Thelma Fleitz, James J. and Evelyn M. Fleitz, and Robert J. and Joan B. Fleitz raises an issue concerning the inclusion in each petitioner's taxable income of a pro rata share of the contributions paid by Ed and Jim Fleitz, Inc. into a profit-sharing trust. These parties agree that this issue will be resolved by the Court's decision on the principal issue.

### OPINION

Petitioner contends it was entitled to deduct its contributions during the years in question, to the profit-sharing trust it had established for its salaried employees, under the provisions of section 404(a). This section allows a deduction for such contributions within certain limits. One of the limitations (set forth in section 404(a)(3)(A)) is that the trust must be "exempt under section 501(a)." And section 501(a) provides, in part, that: "An organization described in * * * section 401(a) shall be exempt from taxation." Section 401(a) sets forth the requirements for a qualified trust. Section 401(a)(3) requires that, in order for the trust to qualify, it must benefit either (A) a specified percentage of all employees, which is not here applicable, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose princi-

pal duties consist in supervising the work of other employees, or highly compensated employees.

Section 401(a)(5) provides in part:

A classification shall not be considered discriminatory within the meaning of paragraph (3)(B) or (4) * * * merely because it is limited to salaried or clerical employees. * * *

It is obvious that the salaried classification in the operation of petitioner's plan results in covering only the employees in whose favor discrimination is prohibited by section 401(a)(3)(B). The three employees covered are petitioner's three officers, two of whom own all of petitioner's stock, and the annual salary of each officer was generally around twice the annual wages paid to the highest paid permanent hourly employee. We do not know whether their principal duties were supervisory for no one inquired of petitioner's president, and only witness, as to the officers' duties. We do not have to know their duties for their status as officers, shareholders, and highly compensated employees is established and that is sufficient to put them in the prohibited group. In fact, petitioner does not argue that the three employees covered by the plan are not in the prohibited group.

Petitioner argues that no discrimination in favor of the prohibited group results because the classification includes *all* of the salaried employees and every employee except those working under the union labor contract. Petitioner argues that the Commissioner's disallowance of its plan on the ground it discriminates in favor of the prohibited group means the Commissioner is guilty of arbitrarily discriminating against petitioner whose business needs only require a few salaried employees and varying numbers of union laborers who work under a union-negotiated contract. Petitioner points out respondent permits qualification of salaried-only plans with respect to large corporations.[3]

Respondent's position is that the result of the classification is that the plan operates to discriminate in favor of the prohibited group. Under the statute no classification, including the salaried-only classification, is acceptable under section 401(a)(3)(B) if it has the effect of discriminating in favor of the prohibited group.

We agree with respondent. The law permits the salaried-only classification but the committee reports[4] make it clear that the classification is not to be used if its effect is to discriminate in favor of the prohibited group.

The fact that petitioner's business needs are such that it needs no more than three nonunion salaried employees, plus a permanent work

---

[3] Petitioner points to Rev. Rul. 66–12, 1966–1 C.B. 72, where respondent approved a salaried-only classification with respect to an employer who had 83 hourly paid employees and 26 salaried employees with 11 in the officer, shareholder, supervisory, or highly compensated group.

[4] H. Rept. No. 2333, 77th Cong., 1st Sess., 1942–2 C.B. 372, 450.

force of union laborers, is of little consequence and certainly is not conclusive. The plain meaning of the statute is that a classification which is limited to salaried employees might or might not be discriminatory, depending upon who the salaried employees are. If the salaried employees and the prohibited group are the same then it seems quite likely that the plan in operation would be considered discriminatory in favor of the prohibited group. When the salaried-employees group includes the prohibited group, plus one or two other salaried employees, discrimination in favor of the prohibited group might still result. Rev. Rul. 66–14, 1966–1 C.B. 75. When the salaried-employees group includes the prohibited group and many more employees it might well be that no discrimination exists. See *Ryan School Retirement Trust*, 24 T.C. 127, where there were 110 rank-and-file employees and 5 officers eligible to participate. In short, the question of whether or not discrimination exists is a question of fact (*Pepsi-Cola Niagara Bottling Corp.*, 48 T.C. 75, 83, on appeal (C.A. 2, Sept. 11, 1967), which must first be determined by the Commissioner, and his determination should not be set aside unless it is found to be arbitrary or an abuse of discretion. However, under the facts of this case where only the three employees in the prohibited group, out of a permanent annual work force of 13 to 15 employees are covered, the Commissioner's determination of discrimination cannot be said to be arbitrary.

There is some suggestion in petitioner's brief that its classification should have been approved because of the language of section 401(a)(5) where it is stated:

A classification shall not be considered discriminatory within the meaning of paragraph (3)(B) or (4) * * * merely because it is limited to salaried or clerical employees. * * *

All that this statute means is that a salaried-only classification will not be considered discriminatory per se. The quoted statute does not render such a classification nondiscriminatory. The plan must meet the requirement that there be no discrimination in coverage in favor of the prohibited group even though the salaried-only classification is used.

Petitioner cites *Pepsi-Cola Niagara Bottling Corp.*, *supra*, where we held the salaried-only classification was not discriminatory. The case does not support petitioner for there we held, on an analysis of the facts, that the plan covering four or five employees, including the sole stockholder and officer, did not discriminate in favor of the prohibited group.

In the case of *Duguid & Sons, Inc.* v. *United States*, (N.D. N.Y. 1967, 20 A.F.T.R. 2d 5725, 67–2 U.S.T.C. par 9719), the court had the same issue as is present here with much the same fact situation.

There the coverage in a construction company's plan was restricted to "any person regularly employed * * * in an executive, administrative or clerical capacity." In effect, the classification resulted in covering the taxpayer's two officers and its one supervisor out of a permanent work force of around nine employees. In holding the Commissioner's determination that the plan was discriminatory was not arbitrary or an abuse of discretion, the court stated:

The hard, cold facts involved here are undisputed, and I so find them, that the three employees covered by the plan were the two owners and managers of the Company and its one Supervisor. It is true, as the government concedes, that by the statute and regulations a plan may cover salaried employees only, and there is no requirement to cover the entire labor force, but in this setting there is sufficient, I think, to base adverse decision upon the portion of the statute that bars approval if the plan favors officers, shareholders and persons whose principal duties consist in supervising the work of other employees, or are highly compensated employees. * * *

We hold the Commissioner's determination, that the trust was discriminatory in operation in favor of the prohibited group set forth in section 401(a)(3)(B), is not shown to be arbitrary or an abuse of discretion on his part. We conclude that the trust was not qualified under section 401(a) or exempt from tax under section 501(a). Consequently, petitioner's contributions to the trust were not deductible under section 404(a)(3). See *Armanco Productions, Inc.*, 49 T.C. 174 (1967). Pursuant to the stipulation, this conclusion will decide the issues in the other cases.

*Decisions will be entered under Rule 50.*