GEORGE LOEVSKY AND RUTH LOEVSKY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LOUIS LOEVSKY AND FAYE LOEVSKY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5579–68, 5580–68. Filed March 31, 1971.

*Jack N. Honart*, for the petitioners.
*Alan M. Stark*, for the respondent.

QUEALY, *Judge:* The respondent determined deficiencies in the Federal income taxes due from George Loevsky and Ruth Loevsky, and Louis Loevsky and Faye Loevsky, as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 5579–68 | 1964 | $3, 953. 55 |
| | 1965 | 6, 222. 81 |
| 5580–68 | 1964 | 3, 953. 55 |
| | 1965 | 6, 182. 76 |

Respondent has abandoned the issue as to whether the contributions to the pension plan are not deductible because the plan was not irrevocably created. See Rev. Rul. 60–276, 1960–2 C.B. 150. Consequently, the only question presented for decision is whether the eligibility classification established under a corporate pension plan which limits participation to salaried employees was discriminatory in operation under sections 401(a)(3)(B) and 401(a)(4).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Louis Loevsky and Fay Loevsky [2] are husband and wife who resided in Fair Lawn, N.J., when the petition herein was filed. They filed joint Federal income tax returns for the taxable years 1964 and 1965 with the district director of internal revenue, Newark, N.J.

George Loevsky and Ruth Loevsky [3] are husband and wife who resided in Lyndhurst, N.J., when the petition herein was filed. They filed joint Federal income tax returns for the taxable years 1964 and 1965 with the district director of internal revenue, Newark, N.J.

L & L White Metal Casting Corp. (hereinafter referred to as L & L) is a New Jersey corporation, duly incorporated and existing under the laws of the State of New Jersey. It was incorporated in 1947 and is engaged in the business of manufacturing lamp and gift components. L & L had only 2,000 shares of common capital stock issued and outstanding during the period involved in this case, and the ownership of said stock was evenly divided between George Loevsky and Louis Loevsky.

L & L duly elected to file its Federal corporation income tax return on the basis of a fiscal year ending on April 30, and so filed its returns for its taxable years ended April 30, 1964, and April 30, 1965. L & L was an electing small business corporation under subchapter S during its taxable years ended April 30, 1964, and April 30, 1965.

On April 8, 1964, L & L executed a trust agreement to administer a pension plan for eligible salaried employees. Its pertinent provisions are as follows:

### ARTICLE I

#### Preliminary Matters

\* \* \* \* \* \* \*

1.04 April 15, 1964 shall be the effective date of this trust on and after which all action contemplated or permitted under its terms may be performed.

### ARTICLE II

#### Definitions

\* \* \* \* \* \* \*

2.04 "Employee" shall mean any person regularly employed by the employer on a salaried basis, excluding (1) any person whose customary employment is for not more than twenty (20) hours in any one week, or for not more than five (5) months in any calendar year, or (2) those who are covered by any other retirement plan contributed to by the Employer, or (3) those whose rates of pay, wages, hours of employment, or other conditions of employment are subject to provisions of the National Labor Relations Act, Labor Management Relations Act, 1947, or other appropriate federal labor legislation which

---

[2] Faye Loevsky is a party to this proceeding by virtue of the joint returns filed with her husband for 1964 and 1965.

[3] Ruth Loevsky is a party to this proceeding by virtue of the joint returns filed with her husband for 1964 and 1965.

restricts the employers rights to extend benefits or modify conditions of employment unilaterally without submitting to collective bargaining with a unit appropriate for such purposes.

### ARTICLE III

#### Eligibility and Entry

\* \* \* \* \* \* \*

3.01 On the effective date any employee shall be eligible to participate provided he has attained age thirty (30) but has not attained age sixty (60). On subsequent entry dates any employee shall be eligible, provided he has completed three years of continuous employment [4] and attained age thirty (30) but has not yet attained age sixty (60).

### ARTICLE V

#### Retirement and Death Benefits

\* \* \* \* \* \* \*

5.03 If the eligible employee is found to be insurable at standard rates by the insurer, a policy shall be obtained to provide a death benefit prior to the normal retirement date of an amount equal to one hundred (100) times the monthly pension to which he is entitled.

Other paragraphs of the trust agreement made provisions for the amounts of employer and employee contributions, the participations of each eligible employee, the benefits to be provided by the retirement income policies, the time of vesting and the respective rights of the employee and the beneficiary under certain circumstances, and administration of the fund.

L & L made contributions to the pension plan trust of $19,285.55 and $17,036.40 in its taxable years ended April 30, 1964, and April 30, 1965, respectively, and claimed deductions for said amounts on its Federal corporate income tax returns for said years.

On April 15, 1964, L & L wrote the district director of internal revenue, Newark, N.J., requesting a determination letter on the qualification of the pension plan under section 401(a) of the 1954 Code and on the exemption of the trust under section 501(a) of the 1954 Code. Following an exchange of correspondence and several conferences between the representative of L & L and the district director's office at which the plan was fully discussed, considered, and examined, L & L was formally notified by the district director in a letter dated September 25, 1964, that the plan failed to qualify under

---

[4] There was a proposed amendment dated Sept. 3, 1964, to change this eligibility requirement to 1 year, however, the record does not indicate any final disposition of this proposed amendment.

section 401(a) of the 1954 Code and that the trust was not exempt under section 501(a) of the 1954 Code. The district director stated that the plan did "not meet the requirements of section 401(a)(1)(B) [sic] of the Internal Revenue Code in that the eligibility requirements (participation limited to salaried employees) results in the discrimination prohibited under section 401(a)(4)."

On November 11, 1964, L & L requested respondent's national office to review the district director's determination. The request was granted, and on December 18, 1964, the representative of L & L conferred with representatives of the Pension Trust Branch, Tax Rulings Division, Internal Revenue Service. On April 2, 1965, the Pension Trust Branch issued a ruling affirming the district director's determination that the plan did not qualify under section 401(a). In its review, the Pension Trust Branch decided that discrimination existed within the meaning of section 401(a)(3)(B).

During the period involved herein, L & L had a collective bargaining agreement with Local Union No. 1158 of the International Brotherhood of Electrical Workers, said agreement being effective as of June 1, 1963. Under the collective bargaining agreement, dated August 12, 1963, L & L recognized the union as the sole and exclusive collective bargaining agency for all employees who were covered by the agreement (the hourly employees of L & L). This agreement provides for wage increases, vacations, holidays, life insurance, and Blue Cross-Blue Shield insurance coverage.

On April 22, 1963, Local Union No. 1158 of the International Brotherhood of Electrical Workers advised L & L by letter of the demands of the membership prior to the negotiation of the union contract, dated June 1, 1963. Discussions ensued with the union with respect to the establishment of a pension plan for hourly employees but no serious ultimate demands were made for such plan during said period, and there was no pension plan in effect for the hourly paid employees of L & L during the taxable years in issue.

During its taxable years ending April 30, 1964, and April 30, 1965, L & L had 13 and 10 regular salaried employees, respectively, who were eligible and covered under the pension plan, and 151 and 144 permanent hourly paid employees, respectively, who were not covered under the plan. The compensation of the regular salaried employees (covered) and most of the permanent hourly paid employees (excluded) as of April 30, 1964, and April 30, 1965 (L & L was on a fiscal year basis ending April 30, and the following schedule is based

on the number of employees employed by L & L during its fiscal years 1964 and 1965), was as follows:

| Annual compensation, wages | Apr. 30, 1964 | | Apr. 30, 1965 | |
|---|---|---|---|---|
| | Covered | Excluded | Covered | Excluded |
| $2,001—$3,000 | | 13 | | 2 |
| $3,001—$4,000 | | 45 | | 49 |
| $4,001—$5,000 | 2 | 29 | 2 | 35 |
| $5,001—$6,000 | 1 | 9 | | 14 |
| $6,001—$7,000 | | 4 | | 6 |
| $7,001—$8,000 | 1 | 2 | 1 | 1 |
| $8,001—$9,000 | 2 | | ¹1 | |
| $9,001—$10,000 | 2 | 1 | ¹1 | 2 |
| $10,001—$11,000 | 1 | | | 1 |
| $11,001—$12,000 | | | ¹1 | |
| $14,001—$15,000 | | 2 | | |
| $19,001—$20,000 | | | 1 | |
| $20,001—$21,000 | | | 1 | |
| $26,000 | | 2 | | ²2 |
| Total number of employees considered for purposes of analysis | 13 | 103 | 10 | 110 |
| | | ³48 | | ³34 |
| Total number of employees | | 151 | | 144 |

¹ All of these persons except one of the two in the $8,001 to $9,000 range as of Apr. 30, 1964, are supervisors.
² Officers and stockholders.
³ These excluded employees occupied full-time positions but were not employed throughout the entire preceding calendar year. These other permanent hourly paid employees who are not accounted for in the above schedule of compensation ranges generally earned between $2,000 and $5,000 per annum as of Apr. 30, 1964, and Apr. 30, 1965.

The salaried employees of L & L averaged approximately 48 hours a week, consisting of 5 days a week plus Saturdays and overtime. The salaried employees of L & L had the longest tenure and received progressive increases as the result of such experience and tenure.

The hourly employees averaged less than 40 hours a week, consisting of 5 days of 8 hours per day, less absenteeism and sick time. An average of 14 hours a week overtime was available to hourly employees, for which they would be paid time and one-half. The hourly employees seldom availed themselves of the overtime work.

The rate of absenteeism amongst hourly employees was substantially greater than that of the salaried employees.

OPINION

Petitioners argue that during the years in question, L & L was entitled to deduct its contributions to the pension plan trust it had established for its salaried employees under the provisions of section 404(a). This provision allows deductions for such contributions within specified limits. Section 404(a)(3)(A) establishes one such limitation and requires that the trust must be "exempt under section 501(a)."

Section 501(a) provides in part that "An organization described in * * * section 401(a) shall be exempt from taxation." Section 401(a) establishes the requirements for a qualified trust. Section 401(a)(3) provides that in order for a trust to be qualified, it must

benefit either (A) specified percentages of all employees (which are not applicable to the plan in this case) or it must benefit—

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

Furthermore, section 401(a)(4) establishes as an additional requirement for qualification that the contributions or benefits provided for under the plan must not "discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees." (These four types of individuals are hereinafter sometimes collectively referred to as the prohibited group.)

Section 401(a)(5) provides that a classification shall not be considered discriminatory within the meaning of sections 401(a)(3)(B) or 401(a)(4) merely because it is limited to clerical or salaried employees, or merely because the contributions or benefits under the plan bear a uniform relationship to the compensation of the employees. This provision means that a salaried-only classification will not be considered discriminatory per se. However, it does not automatically render such a classification nondiscriminatory, and the plan itself must still meet the requirement that there be no discrimination in coverage in favor of the prohibited group even though there is a salaried-only classification.

Respondent contends that the plan is not for the benefit of employees in general but discriminates in favor of the prohibited group and therefore does not qualify under section 401(a). This contention is based on the view that in practice, the plan operates to discriminate in favor of those individuals in the prohibited group.

The question of whether or not discrimination exists in favor of the prohibited group is a question of fact to be determined from all surrounding facts and circumstances. *Pepsi-Cola Niagara Bottling Corp.*, 48 T.C. 75, 83 (1967), reversed on other grounds 399 F. 2d 390 (C.A. 2, 1968). In the first instance, this question must be determined by the Commissioner, and his determination should not be overturned unless it is demonstrated to be arbitrary, unreasonable, or an abuse of discretion. *Ed & Jim Fleitz, Inc.*, 50 T.C. 384 (1968).

Under all the facts and circumstances of this case, where in 1964 61.5 percent of those covered by the plan were in the prohibited group of officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or "highly compensated" employees, and in 1965 70 percent of those covered by the plan were in the prohibited group, the Commissioner's determination of discrimina-

tion in the operation of the plan cannot be said to have been arbitrary, unreasonable, or an abuse of discretion.

In reaching this conclusion, we consider as "highly compensated" within the meaning of sections 401(a)(3)(B) and 401(a)(4) the two employees who in 1964 were in the $14,001–$15,000 compensation bracket at L & L, and the employees who in 1965 were in the $19,001–$20,000 and $20,001–$21,000 compensation brackets. In determining that these employees were "highly compensated" within the meaning of the applicable law, we rely on the position that this Court enunciated in the *Pepsi-Cola Niagara Bottling Corp.* case with respect to the meaning of the term "highly compensated."

In the *Pepsi-Cola Niagara Bottling Corp.* case we found that Congress was concerned that the coverage and nondiscrimination requirements in the qualification provisions for retirement plans "safeguard the public against the use of retirement plans as a tax-avoidance device by management groups seeking to compensate themselves without paying their appropriate taxes." 48 T.C. at 83. Consequently, we agreed that the term "highly compensated" was relative but that it should be "more related to compensation standards which might produce some rather substantial tax avoidance than to the rate of compensation of the hourly paid employees." 48 T.C. at 84.

Applying this rationale to the case before us, it would follow that in 1964 and 1965 the highest paid covered employees [5] (other than the two officer-stockholders) were "highly compensated" within the meaning of sections 401(a)(3)(B) and 401(a)(4). Thus, in each of the years 1964 and 1965, these employees were part of the prohibited group, and on the basis of their presence in this group, the Commissioner's determination of discrimination cannot be said to be arbitrary, unreasonable, or an abuse of discretion.

Petitioners also advance another reason to support their contention that the plan before us does not discriminate in favor of the prohibited group. Petitioners argue that under the provisions of the national labor laws, an employer cannot bargain individually with any of its union employees with respect to wages, hours, rates of pay, or other conditions of employment. Since pension and other forms of deferred compensation and fringe benefits fall within these provisions (see *Inland Steel Co.* v. *National Labor Relations Board,* 170 F. 2d 247 (C.A. 7, 1948), certiorari denied 336 U.S. 960 (1949)), petitioner concludes that where, as in the facts of this case, the union initially made demands for the establishment of a plan for union members but failed to press the demand through to fruition, discrimination cannot be said to exist in a plan which covers all nonunion members.

---

[5] In 1964, there were two employees in this category and both were in the $14,001–$15,000 compensation range. In 1965, there were again two employees in this category with one employee in the $19,000–$20,000 range and one in the $20,001–$21,000 range.

Respondent contends that under the statute no classification, including the salaried-only classification, is permissible under section 401(a) (3) (B) if it has the effect of discriminating in favor of the prohibited group. Respondent argues that the result of the classification in this case is that the plan operates to discriminate in favor of the prohibited group and that it therefore cannot be permitted to qualify.

We agree with the respondent. The language of section 401(a) (3) (B) makes it certain that it is the classification which must be found by the Commissioner not to discriminate in favor of the prohibited group. Furthermore, the committee reports clearly indicate that the salaried-only classification is not to be permitted if its effect is to discriminate in favor of the prohibited group. H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B., 450. Thus, even though a salaried-only or nonunion salaried-only classification is utilized, the plan must still meet the requirement that there be no discrimination in coverage in favor of the prohibited group. *Ed & Jim Fleitz, Inc., supra.*

In this case, we have sustained the Commissioner's determination that the classification discriminates in favor of the prohibited group. In addition, it is certain from the preceding paragraph that the statutory requirements cannot be cast aside because the hourly rated employees and one salaried employee of the petitioners are unionized, have the right and the power to bargain collectively for coverage under the plan or a similar plan, but do not do so, or seek higher hourly wage rates in lieu of coverage under the plan or a similar plan. Extraneous circumstances such as these cannot justify the qualification of a plan where the classification of employees, and thus the plan itself, in effect discriminates in favor of the prohibited group.

The failure to provide for the exclusion of unionized employees in determining whether or not the nondiscrimination requirements of sections 401(a) (3) (B) and 401(a) (4) are met may have been an oversight on the part of Congress, or as is more likely, the failure may be attributable to the fact that problems such as those now before us simply were not foreseeable given the state of the law in the tax and labor areas at the time these provisions were enacted. Furthermore, we realize that the effect of our decision in this regard may be to prevent the employer from establishing a pension or profit-sharing plan for his nonunion personnel. This is especially true of the small business where only a small number of salaried individuals may be required to operate the business with the bulk of the work force being composed of unionized employees.

However, despite the harshness of the result in this case and the potential harshness of the future application of our decision here, it is properly the function of Congress and not this Court to make any appropriate adjustments to the law in this area. We cannot ignore the

plain meaning of the statutory language and the clear indications of congressional intent to achieve a more equitable result.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

FORRESTER, *J.*, dissents.

———

TANNENWALD, *J.*, concurring: I agree with the result reached by the majority, but I do so on the basis that the petitioners have not carried their normal burden of proof as to the absence of discrimination. In cases of this type, I would not impose upon taxpayers the increased burden of proving that the respondent's determination was "arbitrary, unreasonable, or an abuse of discretion."

FEATHERSTON, *J.*, agrees with this concurring opinion.

———

DRENNEN, *J.*, dissenting: I disagree with the basic premise of the majority that the Commissioner's determination that "discrimination exists" "should not be overturned unless it is demonstrated to be arbitrary, unreasonable, or an abuse of discretion." I realize that this standard was used by the Court in *Ed & Jim Fleitz, Inc.*, 50 T.C. 384, an opinion that was not court reviewed, but I think such a standard is entirely too rigid a limitation on judicial review of the Commissioner's determination, which is neither required, nor warranted, by the language of the statute nor its legislative history. I think this Court should disavow the standard adopted in the *Fleitz* case before it becomes any more authoritative.

Section 401(a)(3) provides in general that a pension trust will qualify if it "benefits either—(A) * * * or (B) such employees as qualify under a classification set up by the employer and found by the Secretary * * * not to be discriminatory in favor of" the prohibited group; "and (4) if the contributions or benefits provided under the plan do not discriminate in favor of" the prohibited group. If the language "found by the Secretary" was intended to circumscribe judicial review of the basic question whether the classification is discriminatory unless the Commissioner's determination is demonstrated to be "arbitrary, unreasonable, or an abuse of discretion," I think it would be an abdication by Congress of its legislative function in favor of the Commissioner. But if, as I believe, the quoted language was not intended to give the Commissioner such broad discretion I think the adoption of the standard used by the majority for review of the Commissioner's determination amounts to an abdication of the Court's function to make a meaningful judicial review of that determination. The basic issue is whether the plan either by a classification used, or in operation, does discriminate in favor of the prohibited group, and I

think it is the prerogative of the courts, and their duty when called upon, to make this determination independently, giving due regard to the usual weight afforded the Commissioner's determination.

It should be noted that the words "found by the Secretary * * * not to be discriminatory" appear in paragraph 3(B) of section 401(a) and apply only to the classification set up by the employer and are not applicable to paragrah (4) which requires that the contributions and benefits do not discriminate in favor of the prohibited group. Also, paragraph (5) provides that a classification shall not be considered discriminatory within the meaning of sections 401(a)(3)(B) or 401(a)(4) merely because it is limited to clerical or salaried employees. I agree that the phraseology in paragraph (5) does not make a salaried-employees-only classification nondiscriminatory per se, but I do think it is difficult to reconcile this language with the conclusion of the majority that the Commissioner's unilateral determination that the salaried-employees-only classification used here is discriminatory should not be overturned unless demonstrated to be arbitrary, unreasonable, or an abuse of discretion.

It may also be that the Commissioner's determination here runs afoul of even the majority's standard when the determination is predicated on a formula which compares the compensation of the salaried employees with the compensation of the nonsalaried employees in order to conclude that a majority of the salaried employees are highly compensated and thus fall within the prohibited group, thereby making the classification discriminatory.

FORRESTER and STERRETT, *JJ.*, agree with this dissent.