RAYMOND F. OLMO AND SUSAN A. OLMO, WILLIAM C. RUBACH AND RENETTA RUBACH, RUBACH AND OLMO, D.D.S., INC., RUBACH AND OLMO, D.D.S., INC. EMPLOYEES PENSION TRUST, RUBACH AND OLMO, D.D.S., INC. PROFIT SHARING TRUST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Olmo v. Commissioner
Docket No. 4527-77.
United States Tax Court
T.C. Memo 1979-286; 1979 Tax Ct. Memo LEXIS 236; 38 T.C.M. (CCH) 1112; T.C.M. (RIA) 79286; July 31, 1979, Filed Leland H. Dibble, Jr., for the petitioners. Bryce A. Kranzthor, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in income tax as follows: Petitioner
Taxable Year Ended
Deficiency
Raymond F. and Susan
A. Olmo
December 31, 1972
$ 5,452.00
William C. and Renetta
Rubach
December 31, 1972
12,453.00
Rubach and Olmo, D.D.S.,
Inc.
September 30, 1972
3,842.50
Rubach and Olmo, D.D.S.,
Inc., Employee Pension
Plan
September 30, 1972
107.76
Rubach and Olmo, D.D.S.,
Inc., Profit Sharing
Trust
September 30, 1972
168.77
Due to concessions by the parties the issues remaining *239 are: 1. Whether Rubach and Olmo, D.D.S., Inc. is not entitled to deduct contributions made to a pension plan and profit sharing plan for the fiscal year ended September 30, 1972, on the ground that the plans discriminated in favor of employees in the prohibited group. 2. If the above deductions are not allowed then we must decide whether petitioners Raymond F. Olmo and William C. Rubach have additional income in 1972 attributable to their respective allocable portions of the 1972 pension and profit-sharing plan contributions. [1]
FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. At the time the petition was filed, Rubach and Olmo, D.D.S., Inc. ("the corporation"), a California corporation, had its principal place of business in Santa Rosa, California. Petitioners Dr. Raymond F. Olmo, Susan A. Olmo, Dr. William C. Rubach and Renetta Rubach were residents of California at the time the petition was filed. The principal business *240 of the corporation was the practice of dentistry which was performed by Drs. Rubach and Olmo, employees of the corporation. Dr. Rubach was president and a 50 percent shareholder of the corporation, and Dr. Olmo was vice-president and also a 50 percent shareholder. On July 15, 1971, the corporation adopted pension and profit-sharing plans and created accompanying trusts. The pension plan was a money-purchase type plan and included the following provisions: 2.1. As the effective date of this Plan, every full-time employee of the [corporation], who has been such a full time employee for a period of nine (9) full calendar months, shall qualify to become a Participating Employee if he has then attained the age of twenty-two and one half (22-1/2) years and has not attained the age of fifty-five (55) years. A "full time employee" is one whose customary employment is for five (5) months or more per year and twenty (20) hours or more per week. 2.2. Any eligible employee may become a Participating Employee by filing with the Pension Board in the manner specified in Paragraph 2.3 of this Agreement, his written application for participation included [sic]. In such application, *241 such employee shall signify acceptance of the benefits and terms of this Plan and shall agree to execute such application, to take such physical examination and to supply such information as may be required in connection with the issuance of any insurance contract pursuant to which benefits for such employee under this Plan are to be obtained. Similarly, the profit-sharing plan included the following provisions: 1.9 "Employee" shall mean each regular employee of [corporation] who is employed for twenty (20) or more hours per week and five (5) or more months per year. * * *
2.1 Every Employee shall be eligible to become a Participant on the effective date hereof, or on any anniversary date, if on such date he has attained the age of twenty-two and one half years (22-1/2) years, and has not yet attained the age of fifty-five (55) years, and has been an Employee in the continuous regular employment of the [corporation] during the preceding nine months * * *. * * *
2.3 The Committee shall notify each Employee of his eligibility to participate within thirty (30) days of the date on which such employee first becomes eligible. Upon receipt of the notification that *242 he is eligible to become a Participant, each employee shall designate, in writing, the beneficiary whom he desires to receive the benefits provided hereunder in the event of his death. Such designation shall be filed on the form provided for that purpose by the Committee. Such designation shall constitute acceptance of participation hereunder. An employee may decline to participate hereunder only by express written notification to the [corporation], the Trustee, and the Committee. * * * As originally adopted, both plans required an employee to be 30 years old to qualify for participation in the plans. After discussions with the Internal Revenue Service, the corporation agreed to reduce the plans' minimum age eligibility to 22-1/2 years, so that at least one employee other than Drs. Rubach and Olmo would be covered by the plans. The corporation's board of directors retained the power to amend or terminate the plans and trusts at any time. Upon termination the interests of the participants are to vest 100 percent and no part of the trust corpus is to revert to the corporation. If either plan failed to qualify initially under section 401(a), the contributions and earnings *243 thereon were to revert to the corporation and the plans were to be rescinded abinitio. Participating employees' interests vested under the provisions of both the pension and profit-sharing plans at the rate of 20 percent for each full year of participation in the plan. Generally all contributions to the plan were to be made by the corporation. The corporation was to contribute annually to the pension plan an amount equal to 10 percent of each participant's basic annual compensation. The corporation was to contribute to the profit-sharing plan "such amounts as it in its sole discretion may determine" but not "in excess of that amount which is the maximum allowable tax deduction, including 'carryover' amounts" permitted under applicable Federal tax law. Participating employees were prohibited from alienating or assigning their rights under either plan. Under the provisions of the pension plan, if a participating employee left the corporation for any reason except retirement, total disability, military service or death, that employee's non-vested interest was automatically forfeited and used by the corporation to reduce contributions for the current or next succeeding *244 year. Under the provisions of the profit-sharing plan, if a participating employee left for any reason the non-vested portion of that employee's account was forfeited and allocated among the accounts of the remaining participants. Dr. Rubach, Dr. Olmo and their attorney were appointed trustees for both the pension and profit-sharing trusts. Their duties mainly consisted of keeping records of the individual trust accounts. A Committee under the profit-sharing plan and a Pension Board under the pension plan administered the respective plans. The Committee's and Pension Board's powers included the absolute authority, interalia, to direct the trustee in making investments, to direct when and to whom trust distributions were to be paid, and to determine eligibility and contributions under the plans. The initial members of the Committee and the Pension Board were Dr. Rubach, Dr. Olmo and their attorney. Both plans specifically provided that if an issue arose which affected a member of the Committee or the Pension Board in his individual capacity as a participating employee, distinct from his status as a member of the group of participating employees, the other members of *245 the Committee or the Pension Board must decide that particular issue. On October 18, 1971, favorable determination letters were issued by the Internal Revenue Service to the pension and profit-sharing plans. The determination letters each contained the following caveat: Continued qualification of the plan will depend on its effect in operation as well as its present form. (See section 1.401-1(b)(3) of the Income Tax Regulations.) Following is a schedule of full-time [2] employees of the corporation for the taxable years ending September 30, 1971, through September 30, 1973, indicating dates of birth, dates of service, and type of employment: Date of
Date
Date
Type of Name
Birth
Started
Terminated
Employment
Azevedo, G.
1947
10/70
10/71
Chairside
assistant
Brucker, J.
8/42
3/73
8/73
Receptionist
Campbell, L.
12/42
9/73
Receptionist--
clerical
Falleby, C.
2/48
8/73
9/73
Chairside
assistant
Gibson, D.
5/53
7/73
9/73
Unknown
Gordon, K.
9/49
9/70
2/73
Chairside
assistant
Justis, K.
4/51
7/71
7/73
Chairside
assistant
Mallory, E.
10/40
1/73
2/73
Chairside
assistant
Moore, V.
1/35
2/73
3/73
Unknown
Olmo, R. F.
Dentist
Reynolds, P.
4/49
4/73
8/73
Receptionist--
clerical
Rubach, W. C.
Dentist
*246 As of September 30, 1971 the end of the first year of the plans, Dr. Rubach, Dr. Olmo, Gail Azevedo and Karen Gordon were permanent employees with at least 9 months' service. Karen Gordon failed to meet the minimum age requirement and therefore was ineligible to participate in the plans. Dr. Rubach, Dr. Olmo and Gail Azevedo participated in the plans. The contributions made on behalf of each were as follows: Participants
Pension Plan
Profit-Sharing Plan
William C. Rubach
$ 3,482.00 $ 6,628.00
Raymond F. Olmo
2,772.00
4,908.00
Gail Azevedo
320.40
480.60
Total
$ 6,574.40
$ 12,016.60
Gail Azevedo terminated her employment with the corporation in October 1971. It was typical for a dentist's office in petitioner's locale to have a high turnover of chairside assistants and receptionists. As of September 30, 1972, the year in issue, Dr. Rubach, Dr. Olmo, Kristy Justis and Karen Gordon were permanent employees with at least 9 months' service. However, Kristy Justis was ineligible to participate because she failed to meet the minimum age requirements. Karen Gordon was eligible to participate but voluntarily and without receiving any type of monetary *247 consideration executed waiver forms given her by Drs. Rubach and Olmo. Drs. Rubach and Olmo participated in the plans; contributions made on their behalf were as follows: Participant
Pension Plan
Profit-Sharing Plan
Dr. Rubach
$ 5,335.80
$ 11,383.70
Dr. Olmo
3,655.80
8,464.70
Total
$ 8,991.60
$ 19,848.40
During the years in issue, the corporation paid the following amounts of compensation: Employee
Amount
Dr. Ubach
$ 81,577.00
Dr. Olmo
61,111.00
All other employees combined
17,366.00
On March 24, 1975, respondent notified the corporation that the favorable determination letters issued on October 18, 1971, with respect to both the pension and profit-sharing plans were revoked retroactively to all the open years. [3] Respondent's letters stated, in pertinent part: Our recent examination of your Federal Income tax return for the fiscal year ended September 30, 1972, revealed that your pension plan failed to meet the nondiscriminatory coverage requirements of Code section 401(a)(3). The exclusion of your hourly-paid [4] employees prevents *248 qualification under Code section 401(a)(3)(A) and since the salaried participants covered consist primarily of officers, shareholders, supervisory, or highly compensated employees, your plan fails to meet the nondiscriminatory classification requirements of Code section 401(a)(3)(B). Section 1.401-1(b)(3) of the Income Tax Regulations states that, "the law is concerned not only with the form of a plan but also with its effects in operation". Your plan has operated in such a manner as to discriminate in favor of employees who are officers, stockholders, supervisory, and highly compensated employees thus adversely affecting its qualified status. The plans were subsequently amended removing the provisions for waiver of participation. For the year in issue respondent determined that the plans were not qualified plans under section 401(a)[5] because (1) they did not meet the percentage-of-coverage requirements of section *249 401(a)(3)(A) and (2) the plans in operation discriminated in favor of employees in the prohibited group. Respondent accordingly allowed a deduction equal to 40 percent of the amount contributed under section 404(a)(5) as made to a "non-qualified" trust and disallowed the remaining portion of the claimed deductions. Respondent further determined that Drs. Rubach and Olmo had additional income in 1972 attributable to their allocable share of the fair market value of the profit sharing trust and the pension trust prior to the corporation's fiscal 1972 contribution and their total respective allocable portions of the September 30, 1972 pension and profit-sharing plan contributions. [6]
*250 OPINION Rubach and Olmo, D.D.S., Inc. ("the corporation") seeks to deduct amounts contributed to pension and profit-sharing plans and trusts for its taxable year ending September 30, 1972. Such deductions are allowed under section 404(a)(1) and section 404(a)(3) if the trusts are exempt under section 501(a). Section 501(a) requires that to be exempt the trusts must be "qualified trusts" as defined in section 401(a). In order to qualify under section 401(a), a pension or profit-sharing plan must satisfy the coverage requirements of either subparagraph (3)(A) or (B), which provided as follows during the year in issue: Sec. 401. (a) Requirements for Qualification. -- A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section -- * * *
(3) if the trust, or two or more trusts, or the trust or trusts *251 and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either -- (A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or (B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; On October 18, 1971, respondent issued favorable determination letters regarding the pension and profit-sharing plans and trusts. On March 24, 1975, respondent retroactively revoked both prior favorable *252 determinations for all open years on the ground that the plans failed to meet the coverage requirements of section 401(a)(3). The first year of the plan was not an open year; the second year of the plan is the year in issue, namely, the year ended September 30, 1972. The parties agree that the pension and profit-sharing plans and trusts fail the percentage tests of section 401(a)(3)(A) in the year in issue. Thus, our specific concern here is with section 401(a)(3)(B). As of September 30, 1971, Dr. Rubach, Dr. Olmo and two lower-paid, full-time employees had at least 9 months' service. One of the lower paid employees failed to meet the minimum age requirement of 22-1/2 years and thus was ineligible to participate in the pension and profit-sharing plans. Dr. Rubach, Dr. Olmo and the remaining lower-paid employee did participate. For that year the plans met the 70 percent test of section 401(a)(3)(A). As of September 30, 1972, the end of the fiscal year in issue, Dr. Rubach, Dr. Olmo and two lower-paid, full-time employees had at least 9 months' service. Again one of the two lower-paid employees did not meet the minimum age requirements and was ineligible to participate. *253 The other lower-paid employee, Karen Gordon, voluntarily waived participation in both plans. Consequently, Drs. Rubach and Olmo were the only participants. For this year the plans did not meet the 70 percent test of section 401(a)(3)(A). Both Dr. Rubach and Dr. Olmo were officers, shareholders and highly compensated. In light of these facts, respondent contends that the pension and profit-sharing plans failed to meet the coverage requirements of section 401(a)(3)(B) because they discriminated in favor of Drs. Rubach and Olmo, members of the prohibited group. Petitioners contend that employee Karen Gordon's voluntary waiver of her right not to participate in the pension and profit-sharing plans does not cause discrimination in favor of the prohibited group for purposes of section 401(a)(3)(B). Under the terms of the plans in issue, all employees were eligible to participate except those that had less than 9 months' service, were part-time or were not between the ages of 22-1/2 and 54 years upon becoming otherwise eligible. These restrictions are not discriminatory per se. Section 401(a)(3)(A) *254 as in effect in 1972; Lansons, Inc. v. Commissioner, 69 T.C. 773, 785 (1978), on appeal (5th Cir. Aug. 28, 1978). However, we must also look to whether the plans, in operation, discriminated in favor of the prohibited group. Sec. 1.401-1(b)(3), Income Tax Regs.; Quality Brands, Inc. v. Commissioner,67 T.C. 167, 174 (1976); Loevsky v. Commissioner,55 T.C. 1144, 1151 (1971), affd. 471 F. 2d 1178 (3d Cir. 1973), cert. denied 421 U.S. 919 (1973). Viewing the record as a whole, we cannot find that petitioners have met their burden of proof that respondent erred when he determined that during the year in issue the plans discriminated in favor of the prohibited group. The corporation had four full-time employees eligible to benefit as of September 30, 1972. One employee did not meet the minimum age requirements and therefore was not eligible to participate. Of the three remaining employees, two employees chose to participate in the plans and one voluntarily declined to do so for reasons *255 not disclosed in the record. These facts in themselves do not necessarily mean that the plan is discriminatory in operation. Here, however, the participants were both members of the prohibited group. The net effect is that only the two members of the prohibited group were in fact covered for the year in issue, even though there were two full-time uncovered employees. The record does not rebut respondent's conclusion that the facts evidence the prohibited discrimination. Accordingly, we uphold respondent's finding that in their operation, the plans clearly discriminated in favor of the prohibited group. See Myron v. United States,382 F. Supp. 590 (C.D. Cal. 1974), affd. 550 F. 2d 1145 (9th Cir. 1977); Greenwald v. Commissioner,366 F. 2d 538 (2d Cir. 1966), affg. in part and revg. in part 44 T.C. 137 (1965); Fleitz v. Commissioner,50 T.C. 384 (1968). The unexplained failure to include anyone except members of the prohibited group as participants in the plans when there are two other full-time employees who could have been covered is inconsistent with the Congressional purpose underlying the qualification *256 of deferred compensation plans of providing for the general welfare of employees. Myron v. United States,382 F. Supp. at 598. Even had Gordon not waived, she would have been zero-vested when she left in 1973. But no good reason for her waiver was shown and neither party called her as a witness. [7]
Although we have held that the pension and profit-sharing plans during the fiscal year in issue were discriminatory within the meaning of section 401(a), petitioners contend nonetheless that respondent's retroactive revocation of previously issued favorable determination letters *257 for both plans was an abuse of discretion. Under section 7805(b) respondent has the authority to revoke a prior ruling retroactively. It has been respondent's position, however, that a ruling will not be revoked retroactively absent unusual circumstances. Statement of Procedural Rules, 26 C.F.R. sec. 601.201 (1977); Rev. Proc. 67-1, sec. 13.05, 1967-1 C.B. 544, 553; Pulver Roofing Co. v. Commissioner,70 T.C. 1001, 1011 (1978). On the other hand, it is also clear that we will not disturb such a revocation unless respondent has abused his discretion. Pulver Roofing Co. v. Commissioner, supra.
Petitioners argue that respondent's revocation was improper because any discrimination present as of September 30, 1972, was not due to factors within petitioners' control. This argument is contrary to the evidence. Here petitioners knew they had few permanent employees over the age of 22-1/2 yet petitioners included a provision for waiver of participation in both the pension and profit-sharing plans. During *258 the year in issue, Drs. Rubach and Olmo personally gave waiver forms to Karen Gordon which she later executed. When the corporation's plans were originally approved the plans were on the edge of qualification since two out of three of the participants were members of the prohibited group. The situation where coverage under both plans was limited to Drs. Rubach and Olmo was foreseeable and in fact occurred in the year following the initial year of the plans. See Pulver Roofing Co. v. Commissioner, supra.Compare Lansons, Inc. v. Commissioner, supra.
While petitioners arguably did not control Karen Gordon's individual act of waiver of participation, petitioners did control the form of the plans. Petitioners easily could have guaranteed the continued qualification of both the pension and profit-sharing plans by including all eligible full-time employees as participants. We conclude that the pension and profit-sharing plans in issue discriminated in coverage within the meaning of section 401(a)(3)(B) and that respondent did not abuse his discretion by retroactively revoking his prior favorable determination letters. Accordingly, the trusts *259 are not exempt under section 501(a) for the fiscal year in issue. Having found that the corporation's pension and profit sharing trusts are nonexempt, we must now determine whether and to what extent the allocable portion of contributions made to the trusts during the year in issue on behalf of Drs. Rubach and Olmo is includible in their respective gross incomes. The resolution of this issue will determine the deductible portion, if any (under section 404(a)(5)), of contributions made by the corporation for fiscal 1972. Section 402(b) provides that contributions to an employee's nonexempt trust "shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services) * * *." Section 1.402(b)-1(a)(1), Income Tax Rega., provides, in general, that contributions to a nonexempt trust shall be included as compensation in the gross income of the employee to the extent that the employee's interest in the contribution is "substantially vested at the time the contribution is made. *260 " Property is substantially vested when it is either transferable or not subject to a substantial risk of forfeiture. Section 1.83-3(b), Income Tax Regs.
Petitioners contend that respondent's letters of revocation indicate that the pension and profit-sharing plans are disqualified effective retroactively to the date of initial qualification. According to the terms of both the pension and profit sharing plans, if respondent did not initially determine that the plans were qualified under section 401(a) the plans were to be considered rescinded abinitio and all contributions plus any income earned thereon were to be returned to the corporation. Accordingly, petitioners argue no income is attributable to Drs. Rubach or Olmo since no contributions were made on their behalf. Petitioners' argument is, however, based upon the mistaken premise that respondent's letter of revocation was retroactive to the initial qualification of the plans. Respondent's revocation letters, dated March 25, 1975, specifically state that the revocations are applicable only to "open years." Since, under section 6501(a), fiscal 1971 was no longer an "open year," the pension *261 and profit-sharing plans were not rescinded and contributions made through September 30, 1972, were not returned to the corporation. We therefore need not decide what the effect would have been had all years been open. Petitioners contend, in the alternative, that Drs. Rubach and Olmo should include in gross income their allocable shares of trust contributions made during the year in issue only to the extent Dr. Rubach's and Dr. Olmo's interests were vested under the plans. The parties agree that as of September 30, 1972, Drs. Rubach and Olmo were each 40 percent vested under the terms of both the pension and profit-sharing plans. Respondent argues, however, that the pension and profit-sharing trust interests were not subject to a "substantial risk of forfeiture" within the meaning of section 83(c)(1) and therefore the allocable shares of the 1972 contributions made on behalf of Drs. Rubach and Olmo are fully includible in their respective gross incomes. Respondent alleges that as of September 30, 1972, Drs. Rubach and Olmo had complete control over their allocable shares of the trust funds. The facts, however, do not support respondent's allegations. *262 Section 83(c)(1) defines a "substantial risk of forfeiture" as follows: The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual. Regulation section 1.83-3(c)(1) further explains: (c) Substantial risk of forfeiture -- (1) In general. For purposes of section 83 and the regulations thereunder, whether a risk of forfeiture is substantial or not depends upon the facts and circumstances. A substantial risk of forfeiture exists where rights in property that are transferred are conditioned, directly or indirectly, upon the future performance (or refraining from performance) of substantial services by any person, or the occurrence of a condition related to a purpose of the transfer, and the possibility of forfeiture is substantial if such condition is not satisfied. * * *
Here, under the terms of both the pension and profit-sharing trust provisions, Drs. Rubach and Olmo were each only 40 percent vested as of September 30, 1972. Any increase in vesting rights *263 was conditioned upon the completion of future services as full-time employees. Compare Richardson v. Commissioner,64 T.C. 621 (1975). The facts demonstrate that neither Dr. Rubach nor Dr. Olmo had control over the non-vestated portion of their pension and profit-sharing accounts. Specifically, the plans provided that if a participating employee terminated employment, that employee's non-vested interest was automatically forfeited. Moreover, Dr. Rubach and Dr. Olmo, as participating employees, were prohibited from assigning their right to receive benefits under the plans. Although Drs. Rubach and Olmo each owned 50 percent of the corporation stock, constituted the corporation's officers, and were, in conjunction with their lawyer, the trustees of both trusts and members of the Pension Board for the pension trust and of the Committee for the profit-sharing trust, no greater rights were vested in either Dr. Rubach or Dr. Olmo than those which were provided generally for all participating employees under the terms of the plans. [8] If a matter should arise affecting either Dr. Rubach or Dr. Olmo in his individual capacity as a participating employee, as distinct *264 from his status as a member of the group of participating employees, he was automatically disqualified from participating in the Committee or Pension Board decision as to such matter. In light of the above, we hold that petitioners Rubach and Olmo must include in gross income for the taxable year in issue their respective 40 percent vested allocable portions of contributions made by the corporation to the pension and profit-sharing trusts as of September 30, 1972. Respondent previously conceded that the corporation was entitled under section 404(a)(5) to deduct the amount of contributions made to the pension and profit-sharing trusts for the taxable year in question which was includible in the gross incomes of Drs. Rubach *265 and Olmo for 1972. Sec. 1.404(a)-12(b)(1), Income Tax Regs.
Accordingly, Decision will be entered under Rule 155.
Footnotes
1. Respondent concedes that Rubach and Olmo, D.D.S., Inc., may deduct, under section 404(a)(5)↩, amounts attributable to contributions which are included in the gross income of participating employees for 1972.
2. During this period the corporation employed 6 part-time employees (who worked less than 20 hours a week) all but one of whom were hygienists.↩
3. The corporation's fiscal year ended September 30, 1971, was not an open year.↩
4. Neither the pension plan nor the profit-sharing plan excluded hourly-paid employees. Respondent may have been trying to distinguish the eligibility of full-time v. part-time employees and not hourly-paid v. salaried employees.↩
5. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue. These were the provisions in effect prior to the Employee Retirement Income Security Act of 1974 ("ERISA"). ↩
6. Respondent concedes on brief that petitioners Raymond F. Olmo and William C. Rubach did not receive additional income in 1972 attributable to their respective allocable shares of the fair market value prior to 1972 of the profit-sharing and pension trusts in issue. Secs. 1.402(b)-1(a)(1) and 1.402(b)-1(b)(1), Income Tax Regs.↩ Respondent also concedes that the corporation is entitled to a corresponding deduction to the extent that the September 30, 1972 pension and profit-sharing plan contributions are taxable to Drs. Rubach and Olmo.
7. Under ERISA, which did not apply to the year in issue, an employee who is an "active participant" in a qualified plan may not contribute to an individual retirement arrangement. Sec. 219(b)(2). Waivers of participation by potential participants who prefer individual retirement arrangements to plan coverage may under ERISA be more convincingly tied to the interests of the employee rather than was Gordon's waiver here. We do not intend to suggest that a waiver of participation for such bona fide purposes will, under ERISA, tend to make an otherwise qualifying plan discriminatory.↩
8. While the Committee and the Pension Board exercised more control than the trustees over the profit-sharing and pension trusts, respectively, respondent does not argue, nor do we find, that the rights conferred upon the beneficiaries under the trusts were illusory. Compare Citrus Orthopedic Medical Group, Inc. v. Commissioner,↩ 72 T.C.     (June 11, 1979).