BERNARD MCMENAMY, CONTRACTOR, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MCMENAMY EMPLOYEES' PROFIT SHARING PLAN, AUGUST O. DOENGES, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6908–65, 6909–65.   Filed May 25, 1970.

*Hal B. Coleman*, for the petitioners.
*Glenn L. Strong*, for the respondent.

---

OPINION

In our tax system, substantial advantages are provided for so-called qualified pension, profit-sharing, stock-bonus, and annuity plans. An employer, which establishes such a plan, may deduct its contributions to it. Sec. 404. The employees, for whom such contributions are made, are not taxable on them at the time they are made, irrespective of whether the employees have vested or forfeitable rights to the contributions. Secs. 402, 403. Since the income earned by the fund is not taxable (sec. 501), both the employer contributions and the income can accumulate tax free. An employee is taxable when he receives a distribution from the fund, but there are a number of provisions that mitigate the tax burden at that time. Secs. 37, 72, 151, 402, 403. To qualify for these tax advantages, certain requirements provided by section 401(a) must be met.

The present treatment of qualified plans was, in general, originally enacted as part of the Revenue Act of 1942. The earlier provisions, in Congress' view, were intended to encourage the establishment of benefit plans for employees generally. However, by 1942, it had become apparent that employee plans were being extensively used to benefit only highly paid and stockholding employees. To eliminate such practices, Congress enacted the provisions which now appear as section 401(a)(3), (4), and (5). H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 413, 450–451; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 606–607.

Section 401(a)(3) deals with the employees covered by a qualified plan and prohibits discrimination in favor of employees who are officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or highly compensated employees.

Such employees are hereinafter referred to as the prohibited group. Section 401(a)(4) provides that a plan cannot qualify if the contributions or benefits discriminate in favor of the prohibited group. Section 401(a)(5) sets forth some arrangements that are not to be considered discriminatory including the provision that a plan is not to be considered discriminatory merely because the contributions or benefits thereof bear a uniform relationship to compensation of the participants. In this case, we have an interesting question of what constitutes prohibited discrimination under section 401(a)(4). Since the plan is a profit-sharing plan, the presence or absence of discrimination must be judged in terms of contributions, not benefits. Different tests are applicable in determining whether discrimination exists in a pension plan. Sec. 1.401–1(b)(1) (i) and (ii), Income Tax Regs.; Rev. Rul. 57–77, 1957–1 C.B. 158.

The table set forth in our Findings of Fact shows, as a percentage, the relationship between the employer contributions allocated to the account of Mr. McMenamy and his compensation, and that such percentage exceeds that with respect to any other participating employee. Since the salary of Mr. McMenamy was less than that of some other employees during the first 2 years, the actual amounts of employer contributions allocated to his account during those years were less than the amounts allocated to the accounts of some other participants; but since his salary was increased during the last 2 years, the amounts allocated to his account during those years actually exceeded the amounts allocated to the accounts of any other participants, both absolutely and as a percentage of compensation. Our question is whether these circumstances constitute discrimination proscribed by section 401(a)(4).

Section 401(a)(5) makes clear that contributions which are allocated on the basis of compensation are not discriminatory, even though the higher paid employees do in fact have larger contributions credited to their accounts. However, in this case, the contributions were not allocated simply on the basis of compensation; the years of past service with the employer were also taken into consideration, and it is for that reason, that the contributions allocated to the account of Mr. McMenamy constitute a larger percentage of his compensation. It is said that the formula for allocating contributions was chosen in order to encourage employees to remain with the employer. It is argued that this objective is a legitimate business purpose and therefore, even though it results in Mr. McMenamy receiving more favorable treatment, the result is not the kind of discrimination which was meant to be prohibited by section 401(a)(4).

Section 1.401–4(a)(2)(iii), Income Tax Regs., recognizes that years of service may be taken into consideration in allocating contributions

under a qualified profit-sharing plan, but according to the regulations, the contributions may not be allocated on such basis if it results in discrimination in favor of the prohibited group. At about the time that provision of the regulations was adopted, the respondent issued I.T. 3685, 1944 C.B. 324, restated in Rev. Rul. 68–653, 1968–2 C.B. 177; I.T. 3686, 1944 C.B. 326, restated in Rev. Rul. 68–654, 1968–2 C.B. 179; and P.S. No. 28 (1944), restated in Rev. Rul. 68–652, 1968–2 C.B. 176. In these rulings, he made clear that in his opinion, prohibited discrimination occurs when, as a result of using the years of service, the ratio between the employer contributions allocated to the accounts of the members of the prohibited group to their compensation exceeds the ratio with respect to other participants. Thus, the use of years of service in this case results in prohibited discrimination under the regulations as so interpreted. The regulations, together with the administrative interpretation of them, were adopted in 1944—shortly after the enactment of section 401(a)(4), and they have stood the test of time. Twice—in 1954 and 1962—Congress has considered the requirements for qualification of a plan, and nothing was done to indicate any disapproval of that provision of the regulations or the administrative interpretation of it. These circumstances furnish strong support for accepting the validity of the regulations as interpreted. *United States* v. *Correll*, 389 U.S. 299 (1967).

Our independent consideration of the statute also leads to the conclusion that the effect of the arrangement for Mr. McMenamy contravenes the purposes of section 401(a)(4). An employer may have a number of reasons for establishing a profit-sharing plan, and it has considerable latitude in choosing the type of plan which will accomplish its objectives. In this case, the employer contributions could have been allocated in proportion to compensation, and no questions would have been raised. Furthermore, credits for years of service could have been given if they would not have resulted in prohibited discrimination. For example, if service credits had beeen limited to service performed after the adoption of the plan, such credits might well have been nondiscriminatory. Since Mr. McMenamy was the sole shareholder of the corporation, there was really no need to give him credit for his past service in order to encourage him to remain with the corporation. However, by giving credit for all the past service of Mr. McMenamy, as well as the other employees, he was assured of receiving a more favorable allocation of the employer contributions than any other participant. In time, some other employees might also qualify for the 150-percent weighting, but in the meantime, proportionately larger allocations would have been made to the account of Mr. McMenamy. For the first 4 years of the plan, his contributions were weighted by the 150-percent factor, whereas the highest weight-

ing received by any other employee was 120 percent. When the plan had been in operation for 5 years, two other employees qualified for the 150-percent weighting, but by then, Mr. McMenamy qualified for the 200-percent weighting.

Moreover, the corporation was under no obligation to continue comparable contributions to the plan in later years when other employees might qualify for more favorable weighting of their contributions. Since it was a profit-sharing plan, no contributions would be required in the later years if there were no profits in those years, and since the plan required only a nominal contribution out of profits, the board of directors might decide to discontinue substantial contributions, even if there were profits. It would be unrealistic to expect the respondent to examine the plan each year to ascertain whether the discrimination in the early years is offset by adequate contributions for other employees in the later years. It is not clear at what point in time the respondent would be justified in concluding that the plan was operated in a discriminatory manner—should it wait 10 years, 15 years, or more? In addition, if after 10 years the respondent should decide that the plan is discriminatory because inadequate contributions have been made for the employees other than Mr. McMenamy, it would then be too late for the respondent to do anything about the plan in its early years, for the statute of limitations would have run. Since there is no obligation to continue substantial contributions to the plan in the later years, there is no alternative but to judge the plan on the basis of the facts existing in the years before us.

It seems to us that the more favorable treatment provided Mr. McMenamy is what section 401(a)(4) was designed to prevent. Section 401(a)(5) recognizes some types of differences in treatment which are not to be treated as prohibited discrimination, but there is no exception allowing discrimination based upon years of service. We find no authority in section 401 or in its legislative history for concluding that a plan should be qualified merely because its provisions can be justified as reasonable business decisions. Were we to hold that section 401(a)(4) applies only if the more favorable allocation cannot be justified by some business reason or if there is invidious or rank discrimination, the effect of such provision would be substantially curtailed. It seems clear to us that to carry out the purposes of the nondiscrimination requirements of section 401, we must hold that the deliberate adoption of a formula for allocating contributions under a profit-sharing plan that favors members of the prohibited group is discriminatory within the meaning of such section, irrespective of the reasons for adopting such a formula.

The petitioner relies upon our decisions in *Ryan School Retirement Trust*, 24 T.C. 127 (1955), and *Ets-Hokin & Galvan, Inc.*, 21

T.C.M. 717, 31 P-H. Memo. T.C. par. 62,136 (1962), but those cases are factually distinguishable. In the *Ryan* case, 115 employees were covered when the plan was established in 1944, including 5 in the prohibited group. By 1951, those 5 and 5 other employees were the only remaining participants, and the bulk of the funds were credited to the accounts of the prohibited group, since most of the other employees had forfeited the contributions initially credited to their accounts. We approved the plan, notwithstanding the fact that the prohibited group stood to receive most of the contributions. When the plan was established, no one could have foreseen the events as they actually occurred. One might have anticipated that the prohibited group was more likely to remain with the employer and eventually receive most of the funds in the plan. However, one could not anticipate that only a few of the nonprohibited group would remain to share in the plan; it was altogether possible that a substantial number of such employees might have remained to derive substantial benefits under the plan. The *Ets-Hokin & Galvan* case was similar in that, although most of the funds were eventually credited to the accounts of the prohibited group, such result was not a certainty at the time of the establishment of the plan. In contrast, the allocation formula adopted for the plan before us was known at the time of the establishment of the plan to favor Mr. McMenamy.

The petitioner attempts to support his position by arguing that we ought to consider the contributions made on behalf of all employees in the prohibited group and compare those with the contributions made on behalf of other employees. However, Mr. McMenamy was the sole shareholder, and under section 401(a)(4), a plan is disqualified if it discriminates in favor of shareholders. Therefore, it is appropriate to consider the contributions allocated to his account separately and to compare those with the contributions allocated to other employees. The petitioner also suggests that the differential in favor of Mr. McMenamy is minor and should be overlooked. Yet, that differential is substantial, not *de minimis*, and is repeated. There is no authority under the law for permitting a "little" discrimination.

The petitioner argues that Mr. McMenamy was underpaid for some of the years in issue and that the amounts allocated to his account under the profit-sharing plan were not discriminatory because his total compensation, including such amounts, was fair and reasonable and not disproportionate, considering what he contributed to the success of the business. In *Auner* v. *United States*, an unreported case (E.D. Ill. 1969, 23 A.F.T.R. 2d 1081, 69-1 U.S.T.C. par. 9288), a profit-sharing plan was held to be qualified because the court found that the contributions were allocated on the basis of the value of the employees' contribution to the business. However, we decline to adopt

that interpretation of section 401. We have no evidence from which we can judge the value of the contribution to the business made by Mr. McMenamy as compared to the value of the efforts of the other employees. Furthermore, in light of the purpose of the statute, it seems altogether inappropriate for a court to undertake to make such judgments.

In order to reflect the agreement of the parties as to other adjustments,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

---

TANNENWALD, *J.*, concurring: I agree with the majority because the beneficiary of the differential in contributions was a controlling stockholder. It is far from clear to me that we would necessarily apply the same measuring standards in determining the existence of the prohibited discrimination in a situation where the beneficiaries of the differential based upon years of service are employees who do not have, directly or indirectly, controlling stockholder status.

---

DRENNEN, *J.*, dissenting: I respectfully dissent. The practical effect of the reasoning of the majority, and of the regulation and rulings they uphold, is to make it virtually impossible for a small corporation whose owners are actively engaged in the management of the business to adopt a profit-sharing plan or trust to fund a retirement plan for all of its eligible employees, using years of past service as one of the factors for determining the allocation of contributions and benefits. This is because in a small corporation the officers and stockholders are usually the people who started the business and have the greater years of service. Consequently, if years of past service are taken into consideration in determining allocation of the contributions and all other factors are equal, the share of the contributions allocated to the employees with the greatest length of service will usually represent a greater percentage of their compensation during the earlier years of the plan than will the share allocated to employees with less years of service. However, unless the plan is terminated early or the profits contributed are reduced in later years, the proportions should even out over the long term.

Thus the rule of discrimination, even a "little" discrimination, imposed by the regulations, with respect to profit-sharing plans, and approved by the majority, would make use of past service as a factor in determining the allocation of contributions automatically discriminatory in the case of most small corporations. Yet in most retirement plans years of service, whether rendered before or after adoption of the plan, is, and in my opinion should be, one of the principal factors in determining retirement benefits; and I do not believe Congress

intended that the use of this factor would produce discrimination of the type prohibited by the statute. It is usually just as necessary under a profit-sharing plan as it is under a pension plan that a larger part of the employer's contributions in the earlier years of the plan, proportionate to the employees' compensation or otherwise, be allocated to the older employees in order to fund their retirement benefits prior to retirement age.[1]

There is no indication in the majority opinion that this plan was not intended to be permanent or that the allocation formula was adopted in order to discriminate in favor of McMenamy. Other safeguards may be required to prevent discrimination in favor of the prohibited group under profit-sharing plans adopted by small corporations but I cannot agree with the regulations and the majority opinion in this case that giving credit for past service should automatically disqualify the plan simply because it results in allocation of a larger proportion of the contributions, relative to their compensation, to employees within the prohibited group in the earlier years of the plan. Speculation over a premature termination of the plan does not justify the disqualification of the plan at its inception.

I would conclude that this plan was not discriminatory in favor of the prohibited group.

I find support for my conclusion in *Ryan School Retirement Trust*, 24 T.C. 127, and I do not believe the efforts of the majority to distinguish that case are valid. In that opinion, which was reviewed by the entire Court, we said, at page 134:

> We think that discrimination within the meaning of the statute embodies some real preferential treatment in favor of the officers as against the rank and file employees. That kind of discrimination is not present here, however, because no provision of the plan itself was inherently discriminatory, nor was there any ulterior motive to frame its provisions to channel the major part of the funds to the officer group because of any events or circumstances which the management foresaw or expected to occur. * * *

STERRETT, *J.*, agrees with this dissent.

---

[1] The regulations do not impose the same rule on pension plans. I find no justification in the law, sec. 401 of which sets forth the same requirements for qualification for both pension and profit-sharing plans, for this distinction.