LANSONS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LANSONS, INC., PROFIT-SHARING TRUST: LOUIS LEVINE, A. J. KAISER, TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9336-74, 9347-74.    Filed February 27, 1978.

774

*Martin J. Nash,* for the petitioners.
*Curtis O. Liles III,* for the respondent.

DRENNEN, *Judge:* Respondent determined deficiencies in Federal income tax as follows:

| Docket No. | Petitioner | FYE Aug. 31— | Deficiency |
|---|---|---|---|
| 9336–74 | Lansons, Inc. | 1969 | $7,509.58 |
| | | 1970 | 8,546.65 |
| | | 1971 | 10,035.19 |
| 9347–74 | Lansons, Inc., Profit-Sharing Trust: Louis Levine and A. J. Kaiser, trustees | 1971 | 165.87 |

One issue in docket No. 9336–74 was conceded by petitioner at trial, and the only issue in docket No. 9347–74 was conceded by respondent on brief. The single issue left to be decided is whether under section 404(a)(3), I.R.C. 1954,[1] Lansons, Inc., is entitled to deductions for contributions to a "qualified"profit-sharing trust. Respondent determined that the trust was not a qualified trust under section 401 because (1) it did not meet the percentage-of-coverage requirements of section 401(a)(3)(A); and (2) the plan in operation discriminates in favor of employees in the prohibited group. He therefore computed the allowable deductions under section 404(a)(5) as made to a "nonqualified" trust.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Lansons, Inc. (Lansons), filed its Federal income tax returns for the years in issue with the Southeast Service Center at Chamblee, Ga. Its principal place of business at the time it filed the petition was Miami Beach, Fla.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified. These were the provisions in force prior to the Employee Retirement Income Security Act of 1974 (ERISA).

Lansons was incorporated in 1958 by Louis Levine and his son-in-law, Avram J. Kaiser (also known as Jay Kaiser), to engage in selling men's clothes at retail. Initially Lansons sold only shirts and pants to the tourist trade. In time it began selling high quality men's clothing and expanded its business into several different locations; it became a well recognized outlet for men's clothing in Dade and Broward Counties, Fla. Levine and Kaiser and members of their families were the officers and stockholders of Lansons, and they managed the business. In addition Lansons employed salesmen, clerks, tailors, and pressmen to sell and fit its clothing.

On August 15, 1968, Lansons established Lansons, Inc., Profit-Sharing Trust. The trustees were Louis Levine and Avram J. Kaiser. Lansons adopted the profit-sharing trust to help retain its employees; it had difficulty hiring and keeping employees who were willing to work long hours in the type of work required. The owners of Lansons wanted to develop and expand the company and encourage its employees to learn the business and become a part of it.

The profit-sharing trust agreement (profit-sharing plan) as originally adopted by Lansons provided: coverage for all employees earning in excess of $400 per month (minimum wage requirement), except part-time employees (who were defined as not working more than 20 hours per week and 5 months per year), and who were not less than 25 years (minimum age requirement) and not more than 65 years of age (maximum age requirement), and had been employed not less than 1 year (service requirement). The agreement provided for 15-percent vesting per year for each 1 year of participation in the plan, with 100-percent vesting in the event of death, or total or permanent disability. Contributions were discretionary with the employer and were allocated to the accounts of the participants based upon the compensation of each. Forfeitures, if any, were to be allocated in the same manner. All amounts in a participant's account were distributed to him or his estate upon his death or retirement (normally age 65).

In November 1968, Lansons requested a determination that the profit-sharing trust was a qualified trust within the meaning of section 401(a).

The initial submisstion to the District Director (Jacksonville, Fla.) showed the following coverage:

Participating ................................ 7
Ineligible because
of length of service .................... 8
Ineligible because of
maximum age ............................. 5
Ineligible because
of minimum compensation ............ 4
Total employees ...................... 24

Two Schedule 3's (schedules of employees) were submitted, one for the 7 covered employees and the other for 17 nonparticipating employees. J. Herschel Kelley, a representative of the life insurance company which issued policies to the trust, represented Lansons with respect to the submission.

Respondent, through Bernard T. Boyd, a pension trust examiner, advised Kelley of amendments to the profit-sharing plan required for a favorable determination. These included amendments eliminating the minimum wage requirement of $400 a month and decreasing the vesting percentage from 15 percent to 10 percent a year. Boyd also had suggested that the minimum and maximum age requirements be eliminated, but he was not dogmatic about it.

Accordingly, on January 20, 1969, the plan was amended to eliminate the minimum wage requirement and to change the vesting to 10 percent a year; the minimum and maximum age requirements were not changed.

On January 28, 1969, Lansons submitted the amendments as well as a revised Schedule 3 (Schedule of Covered Employees) for the taxable year ending August 31, 1968. Selected data from the schedule of covered employees follows:

| Name | Officer | Percent of stock owned | Whether principal duties consist in supervising | Year of birth | Length of service | Total nondeferred compensation during year | Allocation during year and percent |
|------|---------|------------------------|------------------------------------------------|---------------|-------------------|--------------------------------------------|-------------------------------------|
| Louise Levine | yes | 66⅔ | yes | 03 | 10 | $31,267.00 | $2,472.83 (35.12%) |
| Avrom J. Kaiser | yes | 16⅔ | yes | 31 | 10 | 23,242.00 | 1,837.72 (26.10%) |
| Morris J. Kachman | | | | | 2 | 9,323.94 | 737.20 (10.47%) |
| Henry Gottheil | | | | | 1 | 8,692.97 | 687.22 (9.76%) |
| Owen G. Parr | | | | | 6 mo. | 5,187.91 | 410.50 (5.83%) |
| Norman Levine | | | | | 3 mo. | 4,470.00 | 353.46 (5.02%) |
| Sally Gordon | | | | | | 2,845.00 | 225.31 (3.20%) |
| Molly Paris | | | | | | 2,310.00 | 182.36 (2.59%) |
| Barbara P. Whitestone | | | | | | 480.00 | 38.02 (0.54%) |
| Sidney Burn | | | | 37 | 2 mo. | 1,216.92 | 96.46 (1.37%) |

It was understood after submission of the amendments that the plan would be approved by the Internal Revenue Service.

Respondent on January 31, 1969, issued a letter approving the profit-sharing trust as a qualified trust under section 401(a) and exempt from income tax under section 501(a).

Bernard T. Boyd, the pension trust examiner, wrote on the back of the revised Schedule 3 this note:

Note - 1/31/69

This annualized compensation permitted a marginally acceptable 401(a)(3)(B) classification, using $9,500 as the breaking point between highly and non-highly compensated employees. (Six of 10 deemed not in prohibited group). Letter issued with a caveat, however. (Almost meet 401(a)(3)(A), incidentally).

(S) B T Boyd
1/31/69

However, this $9,500 breaking point between highly compensated and nonhighly compensated employees was not discussed with Kelley, petitioner's representative.

The favorable determination letter contained a caveat that it was "effective only for the year or years hereafter in which either the percentage tests of Section 401(a)(3)(A) of the Internal Revenue Code are met, or a non-discriminatory classification within the purview of Section 401(a)(3)(B) of the Internal Revenue Code is maintained."

The revised Schedule 3 of covered employees erroneously included Barbara Whitestone as a participating employee. In the original submission, Whitestone had been listed as a nonparticipating employee because of the minimum wage requirement; she earned $480 during the fiscal year ending August 31, 1968. However, despite elimination of the minimum wage requirement she still was not covered under the amended plan because of the minimum age requirement. As a result of this mistake, in lieu of having 10 covered employees, there were only 9 covered employees.

Following is a schedule of employees of Lansons, Inc., for 1968 to 1971 indicating those participating in the plan and those excluded from coverage under the plan for failure to meet the service or maximum and minimum age requirements, as well as the compensation received by all employees during those fiscal periods.[2] Explanatory footnotes appear at the end of the table.

---

[2]The amounts received do not necessarily reflect the level of annual compensation of the employee. If the employee worked only part of the fiscal period the amount would be the compensation received during that part of the period.

778

| Participating employees | 8/31/68 | 8/31/69 | 8/31/70 | 8/31/71 |
|---|---|---|---|---|
| Louise Levine* | $31,267.00 | $36,500.00 | $36,400.00 | $41,600.00 |
| Avram J. Kaiser* | 23,242.00 | 29,215.00 | 31,200.00 | 41,600.00 |
| Morris J. Kochman | 9,323.94 | 11,166.60 | 10,705.64 | 11,764.93 |
| Henry Gottheil | 8,692.97 | 15,190.64 | 15,645.79 | 0 |
| Owen G. Parr | 5,187.91 | 12,232.77 | 0 | 0 |
| Norman Levine* | 4,470.00 | 28,715.00 | 31,200.00 | 41,600.00 |
| Sally Gordon | 2,845.00 | 3,443.34 | 0 | 0 |
| Marlene Paris (Molly) | 2,310.00 | 3,998.20 | 0 | 0 |
| Sidney Burn | 1,216.92 | 0 | 0 | 0 |
| Ada Amaro | 0 | 1,765.36 | 4,712.11 | 4,533.19 |
| Marvin Armband | 0 | 0 | 14,028.38 | 14,413.24 |
| Guadalupe Villa | 0 | 0 | 3,649.29 | 0 |
| *Nonparticipating employees* | | | | |
| Ada Amaro | *414.40 | Participated | Participated | Participated |
| Fundador Arroyo | *5.60 | 0 | 0 | 0 |
| Sam Bugin | *175.00 | 0 | 0 | 0 |
| Willie Davis | *57.00 | 0 | 0 | 0 |
| Irving Baumel | *66.08 | 0 | 0 | 0 |
| Gertude B. Lane | *51.25 | 0 | 0 | 0 |
| Edward W. Scavella[3] | 2,003.78 | 0 | 0 | 0 |
| Eli Schwartz[2] | 1,974.69 | 0 | 0 | 0 |
| Jose Albert Trujillo | 1,412.25 | 0 | 0 | 0 |
| Barry Armband[1] | 0 | 312.80 | | |
| Marvin Armband[1] | 0 | 4,707.32 | Participated | Participated |
| David Cohen[2] | 0 | **3,037.75 | 4,923.75 | 4,802.50 |
| Clementine H. DeAlba[2] | 4,464.70 | 4,673.95 | 4,981.20 | 4,580.01 |
| Emma E. Einstoss[1] | 0 | 1,678.00 | 0 | 0 |
| Leopold A. Greenberg[1] | 0 | 330.00 | 0 | 0 |
| Charles Katz[1] | 0 | 493.83 | 0 | 0 |
| Miguel P. Perez[3] | *1,271.81 | 4,983.63 | *11,915.73 | *17,007.62 |
| Moises Perkel[2] | 5,150.00 | 5,082.50 | 4,388.58 | 5,813.91 |
| Ely H. Schwartz[2] | 7,180.00 | 8,355.00 | 9,484.70 | 0 |
| Louis Schwartz[2] | 866.00 | 2,554.50 | 0 | 0 |
| Rebecca B. Shore[1] | 0 | 1,434.50 | 0 | 0 |
| Arthur V. Tucker[1] | 0 | 2,270.68 | 0 | 0 |
| Gaudalupe Villa[1] | 0 | ***1,148.67 | Participated | 0 |
| Barbara P. Whitestone[3] | 480.00 | 4,490.00 | 5,009.00 | 4,821.24 |
| Michael R. Levine[1] | 0 | 184.17 | 0 | 0 |
| Yetta Shore[2] | 0 | 0 | **1,375.00 | **1,613.00 |
| Lillian Honig[1] | 0 | 0 | 908.00 | 0 |
| Jesus Mallo[1] | 0 | 0 | 1,146.69 | 0 |
| Penny Lee Miller[1] | 0 | 0 | 721.80 | 0 |
| M. M. Alvarez[1] | 0 | 0 | 8.00 | 0 |
| Ann Gershonberg[1] | 0 | 0 | 240.00 | 0 |
| Jack J. Helman[1] | 0 | 0 | 250.00 | 0 |
| Louis A. Lopez[3] | 0 | 0 | **789.48 | **2,488.98 |
| June E. Mager[3] | 0 | 0 | **191.69 | 4,011.52 |
| Sally Sadkin[1] | 0 | 0 | 665.00 | 0 |
| Alfredo C.Alvarez[1] | 0 | 0 | 0 | 78.68 |
| Victor Amaro[1] | 0 | 0 | 0 | 95.60 |
| Henry Blau[1] | 0 | 0 | 0 | 250.00 |
| George Kahlowsky[1] | 0 | 0 | 0 | 4,000.00 |
| Harry Lewis[1] | 0 | 0 | 0 | 2,252.39 |
| Albert Levy[1] | 0 | 0 | 0 | 198.32 |
| Terry M. Miller[1] | 0 | 0 | 0 | 791.80 |
| Jose Ibarra[1] | 0 | 0 | 0 | 879.38 |
| G. Milioni[1] | 0 | 0 | 0 | 4,339.59 |
| L. Torrensell[1] | 0 | 0 | 0 | 2,100.23 |
| M. Taberner[1] | 0 | 0 | 0 | 7,494.75 |
| Michele A. Adrian[1] | 0 | 0 | 0 | 11.60 |

| | | | |
|---|---|---|---|
| Mildred Benjamin[1] | 0 | 0 | 0 | 994.50 |
| Shirley Cohen[1] | 0 | 0 | 0 | 759.00 |
| Ann Dorf[2] | 0 | 0 | 0 | **2,334.00 |
| Shelly Goldstein[1] | 0 | 0 | 0 | 250.00 |
| Harry Klein[1] | 0 | 0 | 0 | 6,765.00 |
| Kay Kritsinis[3] | 0 | 0 | 0 | **33.20 |

\*Officer, stockholder and/or supervisor.
\*\*In addition to being excluded by either maximum age requirement or minimum age requirement, individual was also disqualified under the service requirement.
\*\*\*Part time.

*Reason for exclusion from the plan.*
[1]Less than 12 months service.
[2]Overage (66).
[3]Underage (25).

A summary of the coverage of the profit-sharing plan for 1968 to 1971 and the percentage of participating employees in terms of the section 401(a)(3)(A)[3] is as follows:

| | 8/31/68 | 8/31/69 | 8/31/70 | 8/31/71 |
|---|---|---|---|---|
| Total employees | 24 | 25 | 24 | 32 |
| Less: | | | | |
| Exclusion for length of service | 9 | 10 | 10 | 18 |
| Exclusion for part time | 1 | 1 | — | 3 |
| Employees for 401(a)(3)(A) test | 14 | 14 | 14 | 11 |
| Less: | | | | |
| Exclusion for minimum age | 2 | 2 | 2 | 3 |
| Exclusion for maximum age | 3 | 3 | 4 | 2 |
| Participating employees | 9 | 9 | 8 | 6 |
| Percentage of eligible employees participating | 64.28 | 64.28 | 57.14 | 55.0 |
| Percentage of total employees participating: | 37.5 | 36 | 33 | 18.75 |

Of the participating employees in the profit sharing plan for 1968 to 1971, three were stockholders and supervisors, and the remainder were tailors, salesmen, and office clerks. The employees who were excluded because of maximum age generally were retired tailors who supplemented their income by working for Lansons from time to time.

On October 4, 1972, Lansons adopted a second amendment to the profit-sharing trust which removed the age requirements. For fiscal year 1973 Lansons had 34 employees, of whom 20 were

---

[3]Sec. 401(a)(3)(A) specifically excludes from the computation part-time employees and employees who have not been employed more than a minimum period described by the plan, not exceeding 5 years.

excluded from participation for length of service and the remaining employees were eligible and did participate.

Contributions to the profit-sharing trust were within Lansons' discretion for 1968 to 1971. The contributions were as follows:

| FYE Aug. 31— | Amount | FYE Aug. 31— | Amount |
|---|---|---|---|
| 1968 | $7,041.08 | 1970 | $10,000.00 |
| 1969 | 14,222.69 | 1971 | 12,170.70 |

For the fiscal years 1970 and 1971 a total of $4,314.16 was forfeited by employees leaving Lansons. The contributions and forfeitures were allocated to the participating employees' accounts based on their other compensation for the particular fiscal year.

After an audit of petitioner's income tax returns, respondent notified Lansons on December 1, 1972, that the favorable determination letter of January 31, 1969, had been revoked retroactively to all open years. The letter stated these reasons:

> Examination of Form 2950 filed with the corporate tax returns for the years ended August 31, 1969, 1970 and 1971 indicate discrimination has occured [*sic*] by omitting rank and file employees from participation in the plan. Rapid turnover of lower paid employees resulted in contributions inuring to the benefit of the prohibited group.
>
> Section 1.401–1(b)(3) of the Regulations states, "The law is concerned not only with the form of a plan but also with its effects in operation".
>
> Section 1.401(b)(3) of the Regulations states, in part, "a plan is not for the exclusive benefit of employees in general if, by any device whatever, it discriminates either in eligibility requirements, contributions, or benefits in favor of employees who are officers, stockholders, persons whose principal duties consist in supervising the work of other employees or the highly compensated employee.
>
> Under section 401(a)(3)(A) and 401(a)(3)(B) of the Internal Revenue Code you failed to meet the coverage requirements as defined.
>
> The exclusion of employees for minimum and maximum age as well as the turnover of rank and file employees resulted in the discrimination prohibited under section 401(a)(3)(A) and 401(a)(3)(B).
>
> In addition, incorrect information submitted at the time of qualification resulted in approval of a plan that would not have qualified otherwise.

### ULTIMATE FINDINGS OF FACT

The classification set up by Lansons, Inc., in the profit-sharing plan did not discriminate in favor of employees who were officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees for the years 1968 to 1971.

Respondent abused his discretion in retroactively revoking his ruling that the trust was a qualified trust under section 401(a).

### OPINION

Petitioner seeks deductions for its 1969, 1970, and 1971 fiscal years for amounts it contributed to its profit-sharing trust. The parties agree that these deductions are allowed under section 404(a)(3) if the trust is exempt under section 501(a), and that exemption in turn depends upon whether the trust was a "qualified trust" within the meaning of section 401(a). At issue is section 401(a)(3), which provides:

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exlusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

* * * * * * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; * * *

Since it is agreed that the profit-sharing trust failed the percentage tests of section 401(a)(3)(A), our specific concern is with section 401(a)(3)(B).[4] Respondent revoked his determination

---

[4]Petitioner argued that the provision in issue is section 401(a)(4), but that provision, with respect to profit-sharing plans, deals with discrimination in contributions, not in eligibility requirements. *Wisconsin Nipple & Fabricating Corp. v. Commissioner,* 67 T.C. 490 (1976), on appeal (7th Cir. June 27, 1977) (eligibility requirements in operation examined under sec. 401(a)(3)(B)); *McMenamy v. Commissioner,* 54 T.C. 1057 (1970), affd. 442 F.2d 359 (8th Cir. 1971) (under sec. 401(a)(4) discrimination for a profit-sharing plan judged in terms of contributions not benefits). In his opening brief respondent did not discuss sec. 401(a)(4) but argued that the plan did not qualify under sec. 401(a)(3)(B) because it was discriminatory in operation. In his reply brief respondent reiterates that he is relying on sec. 401(a)(3)(B) and discusses sec. 401(a)(4) only in reply to petitioners' arguments on

letter on the qualified status of the trust for the years in issue on the ground the trust discriminated in favor of the so-called "prohibited group." That is, respondent believes the profit-sharing trust violated section 401(a)(3)(B)'s proscription against a classification set up by the employer that is discriminatory in favor of officers, shareholders, persons whose primary duties consist in supervising the work of other employees, or highly compensated employees. Petitioner argues that the profit-sharing trust satisfied section 401(a)(3)(B), and alternatively, that the Commissioner's retroactive revocation of the trust's qualified status was improper under the Commissioner's administrative pronouncements.

At the outset we note that the classification set up by Lansons in this plan was originally found by the Secretary or his delegate not to be discriminatory in favor of the prohibited group, thus meeting the technical requirement of section 401(a)(3)(B).

During fiscal year 1969 petitioner had 25 employees. Of these, 16 were not eligible to participate in the profit-sharing plan, 10 because they did not have 1 year of service, 1 because he was part time, 2 because they were under 25, and 3 because they were over 65. The 9 eligible employees all participated.

During fiscal year 1970 petitioner had 24 employees. Of these, 16 were not eligible to participate, 10 because they did not have 1 year of service, 2 because they were under 25, and 4 because they were over 65. The 8 eligible employees all participated.

During fiscal year 1971 petitioner had 32 employees. Of these, 26 were not eligible to participate, 18 because they did not have 1 year of serivce, 3 because they were part time, 3 because they were under 25, and 2 because they were over 65. The 6 eligible employees all participated.

Of the employees participating in the plan, three (Louis Levine, Avram J. Kaiser, and Norman Levine) clearly were members of the prohibited group since they were officers, stockholders, or supervisors.

Defining "highly compensated" employees as "more highly" compensated than excluded employees, respondent also would include in the prohibited group employees whose compensation

---

that section as they would relate to sec. 401(a)(3)(B). Consequently, we limit our consideration to whether the plan qualified under sec. 401(a)(3)(B).

exceeded $10,000 for a particular year. Thus respondent would include Morris J. Kochman (1969, 1970, and 1971), Henry Gottheil (1969 and 1970), Owen G. Parr (1970), and Marvin Armband (1970 and 1971) in the prohibited group. On this basis, of the participating employees for the 3 fiscal years, 67 percent, 75 percent, and 83.3 percent would be in the prohibited group. On the other hand, of the nonparticipating employees for the 3 fiscal years, 0 percent, 6 percent, and 4 percent would be in the prohibited group. These figures, respondent argues, show that he did not abuse his discretion in determining that the profit-sharing trust discriminated in favor of the prohibited group.

Critical to our inquiry here is the meaning of "discriminatory" in section 401(a)(3)(B). Respondent, citing section 1.401–1(b)(3), Income Tax Regs., for support,[5] interprets a discriminatory classification as being one that, however reasonable its eligibility requirements at the outset, later results in a difference in coverage in favor of the prohibited group.

We rejected that approach under what later became section 401(a)(4),[6] in *Ryan School Retirement Trust v. Commissioner*, 24 T.C. 127 (1955). In a Court reviewed opinion we said:

---

[5]That regulation, as in effect for the years in issue, reads as follows:

(3) If the plan is so designed as to amount to a subterfuge for the distribution of profits to shareholders, it will not qualify as a plan for the exclusive benefit of employees even though other employees who are not shareholders are also included under the plan. The plan must benefit the employees in general, although it need not provide benefits for all of the employees. Among the employees to be benefited may be persons who are officers and shareholders. However, a plan is not for the exclusive benefit of employees in general if, by any device whatever, it discriminates either in eligibility requirements, contributions, or benefits in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or the highly compensated employees. See section 401(a)(3), (4), and (5). Similarly, a stock bonus or profit-sharing plan is not a plan for the exclusive benefit of employees in general if the funds therein may be used to relieve the employer from contributing to a pension plan operating concurrently and covering the same employees. All of the surrounding and attendant circumstances and the details of the plan will be indicative of whether it is a bona fide stock bonus, pension, or profit-sharing plan for the exclusive benefit of employees in general. *The law is concerned not only with the form of a plan but also with its effects in operation.* For example, section 401(a)(5) specifies certain provisions which of themselves are not discriminatory. However, this does not mean that a plan containing these provisions may not be discriminatory in actual operation. [Emphasis added.]

[6]Sec. 165(a), I.R.C. 1939, provided as follows:

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

\*     \*     \*     \*     \*     \*     \*

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

We think that discrimination within the meaning of the statute embodies some real preferential treatment in favor of the officers as against the rank and file employees. That kind of discrimination is not present here, however, because no provision of the plan itself was inherently discriminatory, nor was there any ulterior motive to frame its provisions to channel the major part of the funds to the officer group because of any events or circumstances which the management foresaw or expected to occur. Furthermore, the original shares of the trust fund belonging to the 5 officers and the 3 rank and file employees who were continuous participants of the plan experienced the same rate of increase in amount over the 7-year period. Thus, the ratio between the shares of each such rank and file employee and each officer was the same as at the beginning of the plan.

The respondent did not argue that the vesting provisions and the method of distributing forfeitures used here were inherently discriminatory. Those provisions, however, are the cause of the alleged discriminatory division of the trust funds. But such provisions as were present here would in any plan inevitably operate to give all *permanent* employees (including both officers and rank and file employees) a preferred position over that group of employees among which turnovers are frequent. If there is any discrimination here, it would seem to be in favor of the permanent employees as against the impermanent employees, but that is not the type of discrimination contemplated by the statute. [24 T.C. at 134.]

We recognize that the *Ryan School Retirement Trust* holding has been eroded in subsequent cases. For example, in *McMenamy v. Commissioner*, 54 T.C. 1057 (1970) (reviewed by the Court), affd. 442 F.2d 359 (8th Cir. 1971), *Ryan* was narrowly distinguished.[7] In *McMenamy* a profit-sharing plan was established under which employer contributions were allocated among the participants on the basis of their compensation weighted for years of service. As a result of the weighing for length of service, contributions allocated to the sole shareholder-officer were proportionately greater in relation to compensation than the allocations to all other plan participants. By giving credit for all past service, the sole shareholder-officer was assured of receiving a more favorable allocation than any other participant because he had the most years of service. Accordingly, the adoption of an allocation formula known to favor the sole shareholder was held discriminatory with respect to contributions under section 401(a)(4).

---

[7]See also "salaried only" plan cases: *Ed & Jim Fleitz, Inc. v. Commissioner*, 50 T.C. 384 (1968); *Loevsky v. Commissioner*, 55 T.C. 1144 (1971); *Liberty Machine Works, Inc. v. Commissioner*, 62 T.C. 621 (1974), affd. per curiam 518 F.2d 554 (8th Cir. 1975); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131 (1976); *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 67 T.C. 490 (1976), on appeal (7th Cir., June 27, 1977).

The *McMenamy* Court distinguished *Ryan School Retirement Trust* because, though the prohibited group in *Ryan* stood to receive most of the contributions as a result of forfeitures, when the plan was established no one could have foreseen the favored treatment:

One might have anticipated that the prohibited group was more likely to remain with the employer and eventually receive most of the funds in the plan. However, one could not anticipate that only a few of the nonprohibited group would remain to share in the plan; it was altogether possible that a substantial number of such employees might have remained to derive substantial benefits under the plan. [54 T.C. at 1064.]

However, we believe the *Ryan School Retirement Trust* case retains its vitality as authority for the proposition that where the purpose and effect of the eligibility requirements in a plan are to avoid the immediate coverage of nonpermanent employees, the classification is not discriminatory. *Sherwood Swan & Co. v. Commissioner,* 42 T.C. 299 (1964), affd. 352 F.2d 306 (9th Cir. 1965).

We find that the eligibility provisions of the Lanson plan, during the years 1967–71, were incorporated for the purpose of limiting the immediate coverage of impermanent employees and that this created a classification that was reasonable under the circumstances and did not discriminate in favor of the prohibited group.[8] The only requirements for eligibility were that the employee be a full-time employee, that he had 1 year of service, and that he was not less than 25 years of age nor more than 65 years of age. All of these are recognized as reasonable eligibility requirements and are used in many qualified plans. In fact, employees falling in the first two categories are specifically excluded from the head count under section 401(a)(3)(A). These requirements applied alike to all employees, whether in the prohibited group or not. There were no eligibility requirements which sometimes operate in favor of the prohibited group such as a minimum salary requirement, a salaried-only classification, and other similar requirements which naturally tend to favor the prohibited group. Nor were there provisions which at times tend to favor the prohibited group such as credits for past service with a formula that takes past service into consideration.

---

[8]See *Ray Cleaners, Inc. v. Commissioner,* T.C.Memo. 1968–6.

We conclude that petitioner's profit-sharing plan was qualified at its inception, after the amendments suggested by respondent had been adopted, and that respondent was correct in his original ruling. We also find that the plan remained qualified throughout the years 1969–71 and that respondent erred in ruling to the contrary in 1972. The primary basis for respondent's adverse ruling in 1972 was that "the exclusion of employees for minimum and maximum age as well as the turnover of rank and file employes resulted in the discrimination prohibited under section 401(a)(3)(A) and 401(a)(3)(B)." We agree that the turnover of rank and file employees resulted in a higher percentage of the permanent employees being covered than the percentage of employees in the nonprohibited group being covered but we do not find this classification to be one that discriminates in favor of the prohibited group within the meaning of section 401(a)(3)(B).[9]

We also believe that respondent's retroactive revocation of his favorable ruling was an abuse of discretion under these circumstances. We recognize that under section 7805(b) respondent may revoke a ruling retroactively. See *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184 (1957). But we also recognize that it has been a long-standing practice of the Internal Revenue Service to assure taxpayers that they may rely upon rulings which they have obtained from the Internal Revenue Service, absent a material change in facts. *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 67 T.C. 490, 497 (1976). There is every indication in the record in this case that petitioner was willing to comply with suggestions by respondent to qualify this plan; and there is no indication that the plan was a subterfuge to distribute profits to shareholders. Before the plan was approved, petitioner amended it to delete a salaried-employees-only classification, a $4,800 minimum earnings requirement, and had changed its vesting provisions, all at respondent's suggestions. With these changes the plan was approved and petitioner relied on the ruling and made contributions to the plan in rather modest amounts. Then, with no warning or effort to negotiate modifications of the plan with petitioner, in December of 1972 respondent notified petitioners

---

[9]See *Ets-Hokin & Galvan, Inc. v. Commissioner*, T.C.Memo. 1962–136.

that the favorable determination letter of January 31, 1969, had been revoked retroactively to all of the open years. The result of such a ruling was to make the trust subject to tax, to disallow a deduction to petitioner for part of its contributions to the trust, and to tax the participating employees with a part of the contributions made in their behalf. Furthermore, on October 4, 1972, petitioners voluntarily amended the plan to remove the minimum and maximum age requirements.

It has been the position of the IRS that although it has the authority to revoke a ruling with respect to pension plans retroactively, a ruling will not be revoked retroactively, except in unusual circumstances, if there has been no misstatement or omission of material facts, and if the facts subsequently developed are not materially different from the facts on which the ruling was based, if there has been no change in the applicable law, and if the taxpayer acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment. Statement of Procedural Rules, 26 C.F.R. sec. 601.201, Rev. Proc. 67–1, sec. 13.05, 1967–1 C.B. 544, 553. We do not find any material misstatement[10] or omission of facts, or any material change in the facts on which the ruling was based, and that taxpayer acted in good faith in reliance on the ruling and that the retroactive revocation was to its detriment. Under the circumstances here present, we find respondent's retroactive revocation of his ruling and disqualification of petitioner's plan was arbitrary and capricious and will not be sustained.

We conclude that during the years 1969, 1970, and 1971 the profit-sharing trust was a qualified trust under section 401(a), the trust was exempt under section 501(a), and therefore Lansons was entitled to deductions for its 1969, 1970, and 1971

---

[10]We do not consider the inadvertent listing of Barbara Whitestone as a participating employee when she in fact was too young to be eligible was such a material misstatement of fact as to justify a change in the ruling. This meant that only 55.5 percent (5 of 9) of the participating employees were in the nonprohibited group rather than 60 percent (6 of 10).

fiscal years for amounts it contributed to the profit-sharing trust. Sec. 404(a)(3).

*Decision will be entered for the petitioner in docket No. 9347–74.*

*Decision will be entered under Rule 155 in docket No. 9336–74.*

Reviewed by the Court.

SIMPSON, *J.*, dissenting: In my judgment, the majority has embraced conclusions which are out of step with the decisions of this and other courts. It is well settled that although a formula for determining eligibility to participate in an employee plan may not be discriminatory on its face, it must be tested in operation, and if in operation the formula results in the prohibited discrimination, the plan does not qualify. Here, substantially all of the benefits accrued to members of the prohibited group; nevertheless, the Court has held the plan to be qualified, and I must dissent from that conclusion.

The predecessor of section 401(a) was first enacted in 1942. Sec. 162(a), Revenue Act of 1942, ch. 619, 56 Stat. 862. This provision was designed to correct prior abuses by insuring that employee plans were operated for the welfare of the employees in general, rather than for the benefit of shareholders, officers, or highly compensated employees. H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 372, 413, 450–451; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 541, 606–607. In addition to providing automatic qualification for plans which satisfied the mechanical percentage of coverage test, Congress provided that more restrictive plans might also qualify, if the Commissioner found that the plan did not discriminate in favor of the prohibited group. Significantly, the report of the Senate Finance Committee provided:

If a plan fails to qualify under the * * * percentage requirements it may still qualify under section * * * [401(a)(3)(B)], *provided always* that (as required by paragraphs (3) and (4)) the plans eligibility conditions, benefits, and contributions do not discriminate in favor of employees who are officers, shareholders, supervisory employees, *or highly compensated employees.* * * * [S. Rept. 1631, *supra*, 1942–2 C.B. at 606; emphasis supplied.]

Since the enactment of this provision, the regulations have always provided that the law is concerned not only with whether a plan is discriminatory in form, but also with its effects in operation. Sec. 1.401–1(b)(3), Income Tax Regs.; sec. 39.165–1(a)(3), Regs. 118; sec. 29.165–1(a), Regs. 111. For example, section 401(a)(5) makes clear that a plan limited to salaried employees may qualify; that is, the use of a salaried-only classification is not inherently discriminatory. Yet, the courts have consistently held that when a plan is limited to salaried employees, its operation must be examined, and the courts have uniformly struck down such plans when discrimination in operation was found. *Commissioner v. Pepsi-Cola Niagara Bottling Corp.*, 399 F.2d 390 (2d Cir. 1968), revg. 48 T.C. 75 (1967); *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 67 T.C. 490 (1976), on appeal (7th Cir., June 27, 1977); *Babst Services, Inc. v. Commissioner*, 67 T.C. 131 (1976); *Liberty Machine Works, Inc. v. Commissioner*, 62 T.C. 621 (1974), affd. per curiam 518 F.2d 554 (8th Cir. 1975), *Loevsky v. Commissioner*, 55 T.C. 1144 (1971), affd. per curiam 471 F.2d 1178 (3d Cir. 1973), cert. denied 412 U.S. 919 (1973); *Ed & Jim Fleitz, Inc. v. Commissioner*, 50 T.C. 384 (1968).

There is no reason to apply different legal principles to plans in which eligibility depends upon length of service, a minimum age, or a maximum age. Indeed, the Senate Finance Committee report stated with respect to the predecessor of section 401(a)(5):

The acceptable provisions mentioned in the law are not intended to be exclusive; for example, there would also be permitted to qualify under section * * * [401(a)(3)(B)] plans limited to employees who have reached a designated age or have been in the employer's employment for a designated number of years or are employed in certain designated departments or are in other classifications, *provided that the effect of covering only such employees does not discriminate in favor of officers, shareholders, supervisory employees, or highly compensated employees.* [S. Rept. 1631, *supra*, 1942–2 C.B. at 606; emphasis supplied.]

See also sec. 1.401–3(d), Income Tax Regs. There may be reasons for limiting a plan to salaried employees, such as the fact that other plans have been created for nonsalaried employees; yet, it has been held that the existence of such justification does not relieve the plan of the requirement of operating in a nondiscriminatory manner. *Babst Services, Inc. v. Commissioner, supra* at 140–141; *Loevsky v. Commissioner*, 55 T.C. at 1151; but see sec. 410(b)(2)(A) (added by sec. 1011, Employee Retirement Income

Security Act of 1974, Pub. L. 93–406, 88 Stat. 900). In like manner, there may be reasons to include minimum age or service requirements as conditions of eligibility or to exclude employees who have passed a maximum age. Yet, the use of such conditions—singularly or in combination—may cause the benefits of the plan to flow to the prohibited group, and when that is the result, the plan has failed to meet the essential condition of qualification, that is, it has failed to benefit employees generally.

The majority places great reliance on *Ryan School Retirement Trust v. Commissioner*, 24 T.C. 127 (1955). However, that case involved unusual facts, and it has been limited to its facts. *McMenamy v. Commissioner*, 54 T.C. 1057 (1970), affd. 442 F.2d 359 (8th Cir. 1971); *Ed & Jim Fleitz, Inc. v. Commissioner, supra; John Duguid & Sons, Inc. v. United States*, 278 F. Supp. 101 (N.D. N.Y. 1967). In the *Ryan School Retirement Trust* case, the drastic reduction in employment was not foreseeable; whereas, here, the effect of the eligibility requirements was to be anticipated.

Finally, the fact that the Commissioner initially approved of this plan does not entitle it to qualification for the years at issue. The information submitted to the Commissioner in connection with the request for qualification showed that the plan was on the borderline of qualification. That information contained an error, which was slight, but in view of the marginal nature of the plan, we cannot assume that such error was insigifnicant. Thus, the ruling was based upon information which never did exist in fact. The U.S. District Court for the Eastern District of Louisiana recently had occasion to consider a somewhat similar situation in the case of *Pittman Construction Co. v. United States*, 436 F. Supp. 1215 (E.D. La. 1977). In that case, the taxpayer inadvertently misrepresented the age of its president and 50-percent shareholder. An initial favorable determination letter was revoked when the misrepresentation was discovered. The court found that the Commissioner's initial approval of the plan did not preclude its later disqualification, for the ruling was valid "only if the facts presented by the taxpayer at the time the ruling was requested were accurate." 436 F. Supp. at 1218.

Moreover, the efficacy of a ruling continues only so long as there are no material changes in the facts upon which it is based. *Wisconsin Nipple & Fabricating Corp. v. Commissioner*, 67 T.C.

at 496 and cases cited therein. Here, the facts did change—coverage of the prohibited group increased year by year. Of the participating employees, 67 percent were in the prohibited group the first year, 75 percent the second year, and 83.3 percent the third year.

Under section 7805(b), revocation of a ruling is applicable retroactively, unless the Commissioner provides otherwise, and his failure to make the revocation prospective only must be sustained unless he acts arbitrarily. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957); see *Dixon v. United States*, 381 U.S. 68 (1965). Under the circumstances of this case, it was surely not arbitrary for the Commissioner to revoke his ruling. Were we to hold that a taxpayer acquires an irrevocable right to a favorable ruling issued without knowledge of what facts may develop, the Commissioner might well conclude that it would be inadvisable for him to issue rulings in such a situation.

RAUM, DAWSON, AND QUEALY, *JJ.*, agree with this dissenting opinion.